ANGELSEA PRODUCTIONS, INC. *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
(15341)

Peters, C. J., and Callahan, Norcott, Katz and Palmer, Js.

Argued February 13—officially released April 23, 1996

*Albert Zakarian,* with whom, on the brief, were *Margaret J. Strange* and *Peter M. Wendzel,* for the appellant (plaintiff).

*Charles Krich,* assistant commission counsel II, with whom was *Philip A. Murphy, Jr.,* commission counsel, for the appellee (named defendant).

KATZ, J. The issues raised by the parties' reservation to this court are whether the statutory deadlines embodied in General Statutes (Rev. to 1993) §§ 46a-83 (b) and 46a-84 (b) are mandatory and whether the failure to abide by those deadlines therefore strips the commission on human rights and opportunities of jurisdiction over a complaint before it.

The following facts are undisputed. On or about April 11, 1991, the defendant Susan E. Hyde filed a complaint with the named defendant, the commission on human rights and opportunities (commission), alleging various discriminatory acts by the plaintiff, Angelsea Productions, Inc., which had employed Hyde from September, 1990, until her resignation on January 29, 1991. On March 3, 1993, the plaintiff moved to dismiss the complaint on the basis that the commission's investigation had not been timely concluded in accordance with the nine month deadline imposed on the commission by § 46a-83 (b).[1] On March 17, 1993, the commission,

---

[1] We note that, although the 1991 revisions of §§ 46a-83 and 46a-84 were in effect when the injury occurred; see *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 792 n.1, 669 A.2d 1214 (1996) (" 'we look to the statute in effect at the date of injury to determine the rights and obligations between the parties' "); because the parties' reservation of issues refers to the 1993 revisions and because the provisions are substantively identical, we will use the 1993 revisions of §§ 46a-83 and 46a-84 in our discussion. Furthermore, although No. 94-238 of the 1994 Public Acts recodified § 46a-83 (b) as § 46a-83 (d), because the parties' reservation of issues references this section as it existed in 1993, we refer to § 46a-83 (b) throughout this opinion.

General Statutes (Rev. to 1993) § 46a-83 provides in relevant part: "Complaint: Investigation; conciliation; disclosure; subpoena; default order. (a) Within ten days after the filing of any discriminatory practice complaint, or an amendment adding an additional respondent, the commission shall cause the complaint to be served upon the respondent together with a notice (1) identifying the alleged discriminatory practice, and (2) advising of the procedural rights and obligations of a respondent under this chapter. The respondent shall file a written answer to the complaint under oath with the commission within thirty days of receipt of the complaint, provided the answer to any complaint alleging a violation of section 46a-64c or 46a-81e shall be filed within ten days of receipt. The executive director of the commission shall refer the same to an investigator to investigate and deter-

despite its two year delay in investigating the complaint issued a reasonable cause finding in favor of Hyde. Thereafter, on June 15, 1993, the commission denied the plaintiff's motion to dismiss. Subsequently, on November 29, 1993, because of the commission's failure to comply with the requirements of §§ 46a-83 (b) and

---

mine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. The commission may conduct fact-finding conferences during the investigatory process for the purpose of finding facts and promoting the voluntary resolution of complaints. As used in this section and section 46a-84, reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint.

"(b) Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator shall consider such comments in making his determination. *The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint, except that for good cause shown, the executive director or his designee may grant a single extension of the investigation of three months.* If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the attorney general or the commission counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within forty-five days of receipt of the complainant's or the respondent's notice of election of a civil action.

"(c) If the investigator issues a finding of no reasonable cause, the complainant may request reconsideration of such finding with the commission not later than fifteen days from the issuance of such finding. The commission shall reconsider or reject within ninety days of the issuance of such finding.

"(d) Upon a determination that there is reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, an investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within sixty days of a finding of reasonable cause. The refusal to accept a settlement shall not be grounds for dismissal of any complaint." (Emphasis added.)

46a-84 (b)[2] that it hold a hearing within ninety days of the issuance of the reasonable cause finding, the plaintiff filed another motion to dismiss and a petition for an expedited declaratory ruling asking the commission to declare that the time limitations of §§ 46a-83 (b) and 46a-84 (b) are mandatory and that failure to follow them strips the commission of jurisdiction over the complaint. On January 4, 1994, the plaintiff's motion to dismiss was denied by the commission's presiding hearing officer. On March 22, 1994, the ruling on the motion to dismiss was upheld by the agency commissioners, who, in accordance with General Statutes § 4-176 (e) (1),[3] issued a declaratory ruling in which they concluded that the time limitations of §§ 46a-83 (b) and 46a-84 (b) are directory and not mandatory. Pursuant

[2] General Statutes (Rev. to 1993) § 46a-84 provides in relevant part: "Complaint: Hearing. Order of default, when. (a) If the investigator fails to eliminate a discriminatory practice complained of pursuant to section 46a-82 within forty-five days of a finding of reasonable cause, he shall certify the complaint and the results of the investigation to the executive director of the commission and to the attorney general.

"(b) Upon certification of the complaint, the executive director of the commission or his designee shall appoint a hearing officer to act as a presiding officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer at a time and place to be specified in the notice, *provided such hearing shall be held not later than ninety days after a finding of reasonable cause.*" (Emphasis added.)

[3] General Statutes § 4-176 provides in relevant part: "Declaratory rulings. Petitions. Regulations. (a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . .

"(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances . . . ."

to General Statutes §§ 4-176 (h)[4] and 4-183,[5] the plaintiff appealed from that declaratory ruling to the Superior Court.

To expedite resolution of the administrative appeal, on April 4, 1995, the parties submitted a stipulated reservation of questions to the Superior Court for consideration by and the advice of the Appellate Court. The questions upon which advice is sought are as follows: (1) "Is the time limit for investigating a complaint set forth in [General Statutes (Rev. to 1993) § 46a-83 (b)] mandatory?" (2) "If the [commission] fails to make a

---

[4] General Statutes § 4-176 (h) provides: "A declaratory ruling shall be effective when personally delivered or mailed or on such later date specified by the agency in the ruling, shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183. A declaratory ruling shall contain the names of all parties to the proceeding, the particular facts on which it is based and the reasons for its conclusion."

[5] General Statutes § 4-183 provides in relevant part: "Appeal to superior court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal.

"(b) A person may appeal a preliminary, procedural or intermediate agency action or ruling to the superior court if (1) it appears likely that the person will otherwise qualify under this chapter to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy. . . .

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

reasonable cause determination within nine months from the date of filing a complaint, as set forth in [General Statutes (Rev. to 1993) § 46a-83 (b)], must the [commission] dismiss the complaint for lack of jurisdiction?" (3) "Is the time limit for holding a public hearing set forth in [General Statutes (Rev. to 1993) § 46a-84 (b)] mandatory?" and (4) "If the [commission] fails to hold a public hearing within [ninety] days after a finding of reasonable cause, as set forth in [General Statutes (Rev. to 1993) § 46a-84 (b)], must the [commission] dismiss the complaint for lack of jurisdiction?"[6] The trial court reserved the questions for consideration by the Appellate Court pursuant to General Statutes § 52-235 and Practice Book § 4147.[7] We transferred the case from

[6] Because the analysis of these reserved questions overlaps, we have combined the first question with the third question and the second question with the fourth question for purposes of discussion.

[7] General Statutes § 52-235 provides: "Reservation of questions of law. (a) The superior court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the supreme court or appellate court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.

"(b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the supreme court or the appellate court."

Practice Book § 4147 provides: "A reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall also be taken directly to the supreme court.

"All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action.

"The advice of the appellate court on a reservation may be reviewed by the supreme court only upon the granting of certification as provided by chapter 72."

the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4023.

To determine whether the commission's declaratory ruling properly decided that §§ 46a-83 and 46a-84 are directory, we begin with an examination of the statutes. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. *Police Department* v. *State Board of Labor Relations*, [225 Conn. 297, 300, 622 A.2d 1005 (1993)]; *Crocetto* v. *Lynn Development Corporation*, 223 Conn. 376, 381, 612 A.2d 1212 (1992). [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 262, 579 A.2d 505 (1990). This case, however, presents a pure question of law, and therefore invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Id., 263; *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 718, 546 A.2d 830 (1988). Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency's determination is not entitled to special deference. *Lieberman* v. *State Board of Labor Relations*, supra [263]; *Connecticut Light & Power Co.* v. *Department of Public Utility Control*, 210 Conn. 349, 357, 554 A.2d 1089 (1989)." (Internal quotation marks omitted.) *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 678–79, 628 A.2d 957 (1993).

Therefore, we approach the task relying on familiar principles of statutory construction in order to determine the intent of the legislature. *Police Dept.* v. *State Board of Labor Relations*, supra, 225 Conn. 303 n.7. "It is fundamental that statutory construction requires us

to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . . *Petco Insulation Co.* v. *Crystal*, 231 Conn. 315, 321, 649 A.2d 790 (1994). In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation. *Broadley* v. *Board of Education*, 229 Conn. 1, 6, 639 A.2d 502 (1994); *Ganim* v. *Roberts*, 204 Conn. 760, 763, 529 A.2d 194 (1987)." (Citations omitted; internal quotation marks omitted.) *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995). The task of determining whether a particular provision is mandatory or directory involves the same criteria, namely, the statute's language, the legislative history and the statutory context. *Engle* v. *Personnel Appeal Board*, 175 Conn. 127, 129–31, 394 A.2d 731 (1978).

Looking first to the words of the statutes, it appears that their language requires the commission to complete its investigation within nine months and hold a hearing within ninety days. Section 46a-83 (b) provides that "[t]he investigator *shall* make a finding of reasonable cause or no reasonable cause in writing and *shall* list the factual findings on which it is based *not later than nine months* from the date of filing of the complaint . . . ." (Emphasis added.) Section 46a-84 (b) provides that the "hearing *shall* be held *not later than ninety days* after a finding of reasonable cause." (Emphasis added.) Definitive words, such as "must" or "shall," ordinarily express legislative mandates of a nondirectory nature. *State* v. *Metz*, 230 Conn. 400, 410, 645 A.2d 965 (1994); see *Statewide Grievance Committee* v. *Roz-*

*bicki,* 211 Conn. 232, 240, 558 A.2d 986 (1989); *LoSacco v. Young,* 210 Conn. 503, 507, 555 A.2d 986 (1989); *Caulkins* v. *Petrillo,* 200 Conn. 713, 717, 513 A.2d 43 (1986); *Sullivan* v. *Liberty Mutual Fire Ins. Co.,* 174 Conn. 229, 233, 384 A.2d 384 (1978). We have noted, however, that the use of the word "shall," though significant, does not *invariably* establish a mandatory duty. *Hall Manor Owner's Assn.* v. *West Haven,* 212 Conn. 147, 152, 561 A.2d 1373 (1989); see, e.g., *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985).

"The test we have adopted for determining whether such a statutory requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial—to matters of convenience or of substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory." (Internal quotation marks omitted.) *Oller* v. *Oller-Chiang,* 230 Conn. 828, 838–39, 646 A.2d 822 (1994). Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute; *LeConche* v. *Elligers,* 215 Conn. 701, 710, 579 A.2d 1 (1990); but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute.[8] Id.

In *Mahoney* v. *Lensink,* 213 Conn. 548, 569 A.2d 518 (1990), this court applied these principles in interpre-

---

[8] Compare *Ghent* v. *Planning Commission,* 219 Conn. 511, 515–16, 594 A.2d 5 (1991) (absence of transcript not fatal to subject matter jurisdiction over administrative appeal despite use of word "shall" in General Statutes § 8-8 [c]), and *LeConche* v. *Elligers,* supra, 215 Conn. 710–11 (absence of good faith certificate not fatal to subject matter jurisdiction despite use of word "shall" in General Statutes § 52-190a), with *Concept Associates, Ltd.* v. *Board of Tax Review,* 229 Conn. 618, 626 n.9, 642 A.2d 1186 (1994)

ting a statute addressing the civil rights of persons who are mentally ill. The court noted that the statute, which was part of the patients' bill of rights, illustrated "the breadth of the legislative concern for the fair treatment of mental patients." Id., 556. The court therefore held that a statutory provision stating that no person treated in a mental health facility " 'shall be deprived of any . . . civil rights' " was substantive in nature, and that the word "shall" was mandatory. Id., 557 and n.11. The plaintiff in the case before us likewise argues that both §§ 46a-83 (b) and 46a-84 (b) relate to matters of substance. We agree.

In *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 235, 278 A.2d 771 (1971), this court stated that the "purpose of [General Statutes § 31-127, the predecessor to today's discriminatory complaint procedure provisions] is to guard against subjecting a respondent to a hearing upon every complaint which might be made to the commission, however unfounded. To guard against such an eventuality, the statute requires the commission, once a complaint has been filed, to investigate it, and it is only after such preliminary investigation has established that there is reasonable cause for action and after arbitration methods have failed that a hearing is authorized." In *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 217–18, 491 A.2d 1096 (1985), this court concluded that General Statutes §§ 46a-82 through 46a-96 afforded the claimant "meaningful relief under the federal and state statutes that govern his claim of age discrimination" and that his failure to exhaust the administrative remedies available to him deprived the trial court of jurisdiction to hear his complaint. Although the investigation, the elimination of the discriminatory practice, the subsequent hearing, if necessary, and the granting of relief,

---

(because General Statutes § 52-72 relates to matter of substance rather than mere convenience, word "shall" is mandatory).

where appropriate, are clearly essential, the speed with which these matters are carried out is necessarily a part of the essence of the statutory scheme. Because there can be no further action by either party until there has first been a finding of reasonable cause or no reasonable cause, a claimant is impotent until there is an investigation, and where there is merit to the allegation, failure to investigate in a timely fashion by the commission allows the discriminatory practice to continue without the administrative oversight and enforcement provisions envisioned by the statutory scheme. Similarly, without timely progress, the respondent is equally hamstrung. Even if the claim is frivolous, the respondent nevertheless remains frustrated pending a determination by the commission because its conduct is constrained to avoid a claim of retaliation. The entire discriminatory practice complaint procedure, as amended by No. 89-332 of the 1989 Public Acts (P.A. 89-332), is replete with deadlines essential to further progress in the administrative arena. See, e.g., P.A. 89-332, § 4 (a) (answer to complaint to be filed within fifteen days of receipt of complaint); P.A. 89-332, § 4 (c) (complainant's request for reconsideration to be filed not later than fifteen days after finding of no reasonable cause; commission to act on request within ninety days); and P.A. 89-332, § 5 (a) (investigator has forty-five days from finding of reasonable cause within which to eliminate discriminatory practice). The policy behind these deadlines of speedy resolution of the claims and elimination of the offending conduct can be implemented only through strict enforcement of the time limits.

We note that this court has previously concluded that the phrases "shall certify the complaint," "shall refer . . . to an investigator to investigate" and "shall attempt to eliminate by conference, conciliation and persuasion" as used in §§ 46a-83 and 46a-84 denote man-

datory obligations. See *Sullivan* v. *Board of Police Commissioners*, supra, 196 Conn. 215–16. In *Waterbury* v. *Commission on Human Rights & Opportunities*, supra, 160 Conn. 234–35, the court examined General Statutes (Rev. to 1958) § 31-127,[9] the predecessor to today's discriminatory complaint procedure in §§ 46a-82 through 46a-96, and concluded that where it found reasonable cause, the commission was *required* to investigate complaints and to try to eliminate the discrimination through the conference, conciliation and persuasion process. Similarly, in *Sullivan* v. *Board of Police Commissioners*, supra, 216, the court stated that the use of the term "shall" in § 46a-84 required the commission to "certify the complaint, hold a hearing and order appropriate relief." Because the legislature is presumed to be aware of the judicial construction placed on its enactments; see *State* v. *Crowell*, 228 Conn. 393, 401, 636 A.2d 804 (1994); its failure to correct or undermine what we stated in those cases is evidence that the legislature has validated our interpretation. *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 439, 525 A.2d 91 (1987). By using the word "shall" to impose deadlines when it revised §§ 46a-83 (b) and 46a-84 (b) in 1989 following our interpretation of the same word in other portions of those provisions, the legislature has signalled its approval of our construction of the term "shall" to denote mandatory obligations. 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 45.10; see *Scheyd* v. *Bezrucik*, 205 Conn.

---

[9] General Statutes (Rev. to 1958) § 31-127 provides in relevant part: "After the filing of any complaint, the chairman of the commission shall refer the same to a commissioner or investigator to make prompt preliminary investigation of such complaint and, if such commissioner or investigator determines after such preliminary investigation that there is reasonable cause for believing that an unfair employment practice has been or is being committed as alleged in such complaint, he shall immediately endeavor to eliminate the unfair employment practice complained of by conference, conciliation and persuasion."

495, 506, 535 A.2d 793 (1987) (because legislature is presumed to be aware of interpretation that courts have placed on existing legislation, failure of legislature to amend statute to change our interpretation presumes that it acquiesced in our interpretation).

Additionally, we recognize the "familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance." (Internal quotation marks omitted.) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 343, 612 A.2d 1203 (1992). In *Sullivan* v. *Board of Police Commissioners*, supra, 196 Conn. 216, prior to the passage of the 1989 amendment that added the time deadlines in issue in this case, this court concluded that the word "shall," used in various parts of §§ 46a-83 and 46a-84, imposed mandatory obligations. We see no reason to interpret that term differently when it is used elsewhere in the same statute. Indeed, it is counterintuitive to suggest that the legislature would have intended, without comment, to give the word "shall" two distinctly different meanings within the same statute. See *Weinberg* v. *ARA Vending Co.*, supra, 343.

Moreover, we note the legislature's use of the word "may" in other subsections of the same statute; see, e.g., General Statutes § 46a-83 (a) (commission may conduct fact-finding conferences); as well as in other statutes within the discriminatory complaint procedure. See General Statutes §§ 46a-101 and 46a-102. The use of the word "shall" in conjunction with the word "may" confirms that the legislature "acted with complete awareness of their different meanings"; *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 506, 522 A.2d 264 (1987); and that it intended the terms to have different meanings. *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981) (use of different terms within same sentence of statute

"plainly" implies different meanings intended), aff'd, 192 Conn. 252, 470 A.2d 1216 (1984); see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988).

One final reliable guide in determining whether a statutory provision is directory or mandatory is whether the failure of the state to comply with its provisions results in either a penalty or a requirement that the state seek an extension of time. *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 273–74, 610 A.2d 584 (1992); *State* v. *White*, 169 Conn. 223, 238, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). Pursuant to § 46a-83 (b), if the investigator fails to make a finding regarding reasonable cause within the prescribed nine month time period, "the executive director or his designee may grant a single extension of the investigation of three months." If the investigator merely had to attempt to comply with the nine month deadline, there would be no purpose in providing for an extension. We have often recognized that the legislature is not presumed to enact meaningless legislation. *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 61, 523 A.2d 477 (1987).

Our conclusion that both time deadlines are mandatory is buttressed by the legislative history of P.A. 89-332, the act that added the time deadlines in issue. In reporting the bill out of committee, Representative Eric D. Coleman identified a number of changes included in the amendment.[10] He remarked that these amendments were "designed to address some problems that have come to light with the [commission]. It is hoped that some of the changes that are recommended would serve as significant reforms, particularly with respect to the processing of individual complaints of discrimination."

---

[10] We pay particular attention to statements of the legislators who sponsored the bill. *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 275, 524 A.2d 621 (1987).

32 H.R. Proc., Pt. 23, 1989 Sess., pp. 8166–67. Significantly, Representative Coleman addressed the deadline in § 46a-83 (b), explaining that "[t]he hearing subsequent to the finding of reasonable cause and conciliation efforts which fail would be required to be held *not later than ninety days* from the finding of reasonable cause." (Emphasis added.) Id., p. 8169.

Similarly, then Senator Richard Blumenthal, reporting the joint bill out of the conference committee, stated that the bill "has the objective of accomplishing the recommendations of the task force appointed by Governor O'Neill to investigate the performance [of the commission]. . . . The bill, which represents a compromise among many of the groups and individuals involved in this very important area, makes some major changes in the current law . . . and very essentially places time frames on each of the developments that must occur before a complaint is finally resolved. It provides that the respondent *must* answer a complaint within [fifteen] days of when he is served, provides that an investigation *must* commence right away, that a finding and conclusion *must* be reached within nine months . . . and that within [ninety] days of a finding of reasonable cause, there *must* be either a hearing held, or the conciliation process *must* have reached a settlement." (Emphasis added.) 32 S. Proc., Pt. 12, 1989 Sess., pp. 4150–52. For complaint resolution in the administrative setting to be effective, the legislature understood that resolution of these matters had to be expeditious. It recognized that justice delayed is justice denied. Id., pp. 4150–51. Accordingly, Senator Blumenthal concluded with the "[hope] that [this bill] will move Connecticut forward in terms of providing a more expeditious, fair, timely resolution of civil rights complaints . . . ." Id., pp. 4152–53.

Our conclusion is reinforced by the legislative history of prior amendments made in 1991. Once again, speak-

ing on behalf of the proposals, Representative Coleman stated that "[t]he [commission] is in the nature of an administrative agency and the purpose of the administrative agency is to expeditiously resolve some complaints in more of an informal nature than the court system would allow. If complaints which are filed with [the commission] are going to linger and not be resolved expeditiously I think it's only fair to the parties that they have the full access of the court system." 34 H.R. Proc., Pt. 23, 1991 Sess., pp. 8917–18. Consequently, the legislature enacted General Statutes § 46a-101 requiring the executive director of the commission to issue a release allowing the complainant to bring a civil action when the complaint is still pending with the commission after the expiration of 210 days from the date of its filing. It is noteworthy that the original version of the amendment had provided that the commission "may" dismiss an action following the commencement of a civil action in the Superior Court when a release has been granted. In order to respond to concerns that a discretionary dismissal could lead to jurisdiction in two forums, the statute was amended to provide that the commission "shall" dismiss the case to make dismissal mandatory in order to foreclose the possibility of jurisdiction existing in two places. 34 H.R. Proc., supra, p. 8926. On the basis of this legislative history, and of the statute's language and its context, we conclude that the legislature considered the word "shall" to be mandatory in the context of the discriminatory practice and complaint procedure.[11]

---

[11] The commission has cited to other portions of the legislative history of P.A. 89-332 to support its argument that the deadlines in §§ 46a-83 (b) and 46a-84 (b) are directory and not mandatory. We are not persuaded. In the context of addressing complaints pending as of January 1, 1990, Representative Coleman stated that the commission "would be required to endeavor to eliminate its backlog by July 1, 1991." 32 H.R. Proc., Pt. 31, 1989 Sess., p. 10,943. If the commission could not accomplish this within eighteen months, those cases "would still be pending within the Commission on Human Rights and Opportunities." Id., p. 10,944. In response to questions

Finally, the commission's argument that due process requires that it maintain the ability to process the complaint based upon *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), is equally unconvincing. "[T]he due process clauses of the state and federal constitutions require that one subject to significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard. . . . We note, however, that [d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Citations omitted; internal quotation marks omitted.) *Tedesco* v. *Stamford*, 222 Conn. 233, 242, 610 A.2d 574 (1992). The United States Supreme Court, in *Logan*, first determined that the right to use the adjudicatory procedures of a state antidiscrimination agency is a property interest protected by the due process clause of the fourteenth amendment to the United States constitution.[12] *Logan* v. *Zimmerman Brush Co.*, supra, 428–30. Accordingly, the court held that *some form of hearing* under the Illinois Fair Employment Practices Act was required to allow a civil rights complainant to redress instances of discrimina-

from other members of the General Assembly regarding the purpose of including the July 1, 1991 date, Representative Richard D. Tulisano stated that "it is important that we establish a deadline for people to work towards to get a job done. There has been a consistent backlog over the years of some 2000 and some odd cases, 2200 cases, and this will ask them to start to work and put some efforts into resolving it . . . ." Id., p. 10,946. Both representatives were addressing the backlog of cases and not the deadlines for investigations and hearings. The legislature recognized the need to treat the then existing backlog with some patience but intended the time limitations for claims not yet filed to be strictly enforced so as to avoid the creation of future backlogs.

[12] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

tion and to be afforded damages flowing from such wrongs. Id., 433–34. The court further acknowledged that this substantial interest could not be denied on the basis of agency action over which the complaining party had no control. Id., 436. Consequently, the court held that a ruling by the Illinois Supreme Court interpreting as mandatory a state statute requiring the Illinois fair employment practices commission to schedule a fact-finding conference within 120 days of the filing of a complaint violated the complainant's right to due process. Id., 437.

The plaintiff in the case before us responds that because Hyde, the complainant, can bring a civil action pursuant to General Statutes § 46a-101 et seq., which affords greater relief than § 46a-86 (a), the due process rights of both the complainant and the respondent are protected. We agree with the plaintiff. In *Logan*, the court specifically noted that the Equal Opportunities for the Handicapped Act, which otherwise would have provided the claimant with the right to bring a civil action, had been repealed. Id., 435–36 n.9. Furthermore, even for claims accruing under that act prior to the repeal date, the court remarked that it was "not clear . . . that such an action is available to [the claimant] . . . . We . . . hesitate to remit [the claimant] to so speculative a remedy." Id. In contrast, there is no claim in the present case that the civil action available to Hyde is constitutionally inadequate. On the contrary, as the plaintiff points out, Hyde is entitled to greater damages following a civil action than she could otherwise recover under General Statutes § 46a-86 (a) for a violation of General Statutes § 46a-60. *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 101, 653 A.2d 782 (1995) (damages for emotional distress and attorney's fees not authorized under § 46a-86 [a] for discriminatory employment practices). Therefore, Hyde will receive an adequate and

meaningful opportunity to present her case as is required by due process.

Therefore, under well established principles of statutory construction, we conclude that the legislature's intent can best be implemented by a determination that the time limits set forth in §§ 46a-83 (b) and 46a-84 (b) are mandatory. Consequently, they must be strictly complied with. *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 373, 623 A.2d 483 (1993).

The commission's second contention, that its failure to comply with these time limits does not divest it of jurisdiction, depends *exclusively* on its argument that those limitations are directory and not mandatory. Consequently, the second and fourth reserved questions regarding whether the failure to follow the procedure prescribed in §§ 46a-83 (b) and 46a-84 (b) leaves the commission incompetent to entertain the complaint are likewise resolved in the plaintiff's favor.[13]

---

[13] The parties do not specify whether their reserved questions are in personal or subject matter jurisdictional terms. As stated above, however, resolution of this case does not require consideration of that issue. We note, however, that our decision in this case is consistent with our recent cases in which we decided issues of jurisdiction based upon legislative intent. For example, in *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764–65, 628 A.2d 1303 (1993), in deciding whether the legislature, in imposing a time limitation, intended to impose a subject matter jurisdictional requirement on the right to appeal, we concluded that where the legislature has manifested an intent to make time constraints mandatory, they act as a subject matter jurisdictional bar. Similarly, we have recently revisited whether time limitations on actions are procedural or substantive and have stated that "where a specific limitation is contained in the statute which establishes the remedy . . . [and where] the remedy exists only during the prescribed period and not thereafter . . . [i]n such situations the Statute of Limitations is considered substantive . . . ." (Internal quotation marks omitted.) *Bridgeport* v. *Debek*, 210 Conn. 175, 188, 554 A.2d 728 (1989). Finally, if personal jurisdiction is at issue, we note that the plaintiff made a timely motion to dismiss and that the defendant has failed to assert that the plaintiff has waived its noncompliance with §§ 46a-83 (b) and 46a-84 (b).

The answer to all four reserved questions is yes.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.