[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff is an employee organization (Union); which, pursuant to the Municipal Employees Relations Act (MERA, § 7-467, et seq.), represents for collective bargaining purposes all custodial and maintenance employees of the Norwalk Board of Education (Norwalk). The Union and Norwalk at all times pertinent to this appeal were parties to a collective bargaining agreement.
The Union in 1993 complained to the Connecticut State Board of Labor Relations (CSBLR) that Norwalk engaged in practices prohibited by § 7-470 of the MERA, by hiring a private contractor to replace a transportation driver who had been a member of the bargaining unit.[1]
The CSBLR held hearings on the complaint on June 21, 1995, November 27, 1995 and May 23, 1996. The parties appeared with counsel produced evidence and filed post hearing briefs by July 25, 1996. The CSBLR issued a decision of January 28, 1998 dismissing the plaintiff's complaint.
The plaintiff brought this appeal on March 12, 1998 pursuant to the Uniform Administrative Procedure Act (UAPA) § 4-166, et seq., § 4-183. The answers and record were filed on May 4, 1998. Briefs were filed by the Union on July 9, 1998; Norwalk on July 30, 1998 and the CSBLR on August 10, 1998. The parties were heard in oral argument on November 18, 1998.
The facts as established by substantial evidence in the record are as set forth in the CSBLR decision.
 4. For over twenty-five years, the School Board has contracted with outside vendors to transport students to the Norwalk public schools and private parochial schools, including special education and mainstream students.
CT Page 13978
 5. Most recently, the School Board contracted with Laidlaw Transit, Inc. (Laidlaw) for a term from July 1, 1988 to June 30, 1993 which was extended to June 30, 1994. (Ex. 6) Laidlaw was responsible for transporting about 6,000 of the total 10,000 students in the Norwalk system, using seventy five vehicles which ranged in size from full buses to busettes and wagons.
 6. During the 1992-1993 school year, the School Board additionally contracted with various other vendors on an ad hoc basis to temporarily transport students who had moved away from the regular bus routes or had special transportation needs due to a disability (including special education students). The vendors included Westport Star Taxi, Valley Transit District, Cooperative Educational Services, Yellow Cab and Ace Ambulance. (Ex. 7-11)
 7. On June 28, 1991, the School Board and the Union entered into a settlement agreement to resolve issues raised in a prohibited practice complaint filed by the Union (No. MPP-13, 161), wherein they agreed that the School Board "will consult with the Union prior to implementing any cuts". In the event of layoffs, the School Board agreed to abide by the collective bargaining agreement. (Ex. 1)
 8. Olga Hernanadez (Hernandez) was the only bargaining unit member to hold the position of Transportation Driver. She was responsible for making two runs per day including driving the van to pick up and drop off special education students in the morning and afternoon, and taking children to special activities at the YMCA at noon time.
 9. In February, 1991, Union President, John Mosby (Mosby) initiated a meeting with Dr. Michael L. Muro, Assistant Superintendent of Norwalk Schools (Muro) after the Union experienced problems when the Transportation Driver was absent. As a result of this meeting, the Union and the School Board entered into a statement of agreement wherein they agreed that Thomas Mylinski, (Mylinski) a custodian in the bargaining unit, would be transferred to a Porter/Driver position. Mylinski's new duties would include acting as a back-up driver for the student van when the Transportation Driver was absent. Mylinski was required to obtain his public service license within 30 days. Marcus Davis, (Davis) another CT Page 13979 bargaining unit member, was to act as the back-up driver to Mylinski. (Ex. 4)
 10. During the 1992-1993 School year, Mosby and Muro met on two separate occasions to discuss the possible elimination of the Transportation Driver position.
 11. In February, 1993, Hernandez was injured on the job and was placed on worker's compensation. She remained incapacitated and was eventually separated from service when her sick leave was exhausted in August, 1993. (Ex. 16)
 12. During Hernandez' absence from February, 1993 to August, 1993 the only qualified, licensed driver in the bargaining unit was Tom Mylinski, but Mylinski had since been promoted to the Mail Clerk and no longer wanted to perform transportation duties.
 13. After Hernandez's absence in February, 1993, Mosby spoke with Muro and requested the School Board make alternative arrangements to cover Hernandez's absence.
 14. During Hernandez's absence, the School board used Laidlaw to cover her customary route.
 15. On June 18, 1993, William J. Walko, (Walko) Director of Personnel for the School Board, sent a letter to Hernandez requesting an appointment, which letter was copied to Mosby. (Ex. 13) Soon thereafter, Walko met with Hernandez and discussed her options because the School Board was planning to eliminate her position. Walko and Hernanadez discussed the possible elimination of her position and her worker's compensation status.
 16. By memorandum dated June 24, 1993, Mr. Senes, Director of Finance, informed the School Board of the Finance Board's recommendations to balance the operating budget. Among other things, the recommendations included the elimination of the Transportation Driver position. (Ex. 12)
 17. On June 30, 1993, Walko met with Mosby and informed him that the School Board eliminated the Transportation Driver position at their meeting and the previous night. The conversation was memorialized in correspondence of the same date from Walko to Mosby. (Ex. 15) During the meeting, Mosby CT Page 13980 objected to the elimination of the position because the School Board had not first discussed it with the Union. In a memo dated July 12, 1993, Mosby reiterated his position and his belief that the School Board had committed a prohibited practice. (Ex. 2)
 18. As of July 1, 1993, the Transportation Driver position was eliminated from the budget and Laidlaw agreed to perform the work for no additional cost.
 19. At the time Hernandez' position was eliminated the School Board offered her another position in the bargaining unit at the same rate of pay, pending her return from her injury. Hernandez did not recover from her injury and was subsequently separated from service in August, 1993.
(Return of Record (ROR), Decision No. 3568, pp. 2-4.)
The parties agreed at oral argument and in their briefs that the complaint is covered by the "shared work" principal. The CSBLR noted:
 Prior to our decision in City of New Britain [Decision No. 3290 (1995)], our case law concerning subcontracting and transfer of bargaining unit work had developed to include a general statement of law that provided that, in the absence of an adequate defense, an employer committed an illegal refusal to bargain and thus, a prohibited practice under the Act, when it unilaterally contracted out and assigned to non-bargaining unit personnel, work that had been performed exclusively by bargaining unit employees. See Middletown Redevelopment Agency, Decision No. 1880 (1980); City of Torrington, Decision No. 2172 (1983); Town of East Haven,
Decision No. 2020 (1981); Board of Education of City of Hartford, Decision No. 1938 (1980); and City of Watertown,
Decision No. 2515 (1986).
 Flowing from the above statement was our so-called shared work doctrine that held that where work had, by practice, been shared between bargaining unit and non-bargaining unit workers in the past, then the continued assignment of that work from unit to non-unit individuals did not constitute a violation of the Act. Hartford, supra; City of New Haven, supra; and Torrington, supra.
CT Page 13981
(Footnote omitted.) (ROR, Decision No. 3568, pp. 6-7.)
The resolution of the case is controlled by the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183(j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.) Dolgnerv. Alander, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The evidence established that student transportation had primarily been conducted by outside contractors. Transportation work was thus shared work.
The CSBLR has refused to "micro-divide" work into narrow specific tasks to avoid the shared work rule. See Metropolitan District Commission, Decision No. 3116 (1993); Plainville Board of Education, Decision No. 1192 (1974).
The labor board reasonably concluded that the job duty was driving students;not a separate duty of driving the specific van or route. CT Page 13982
The Union also raises a claim related to the procedure followed at the hearing. On the date of the first hearing the Attorney who was to represent Norwalk was suddenly taken ill. A different lawyer appeared at the hearing and asked to defer its presentation to the subsequent hearing date. The request was granted over the Union's objection. At the second hearing the Union President was not present because he did not receive notification. The Union's request for a continuance was denied. The Union and its President were able to review a transcript and offer rebuttal testimony at the third day of hearings.
The Court under the UAPA, § 4-183; "shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced . . ." The plaintiff has failed to show how the procedures followed substantially prejudiced its rights. The only claim is that the Union President could have assisted in cross examination. The facts were not substantially disputed and the Union was afforded an opportunity for rebuttal. The Union fails to point to any specific evidence or finding that was allegedly affected by the procedural rulings.
The decision on the continuance was clearly discretionary with the agency. An agency's discretionary determinations are to be awarded considerable weight by the court. Liberman v. StateBoard of Labor Relations, 216 Conn. 253, 262 (1990); AngelseaProductions. Inc. v. Commission on Human Rights andOpportunities, 236 Conn. 681, 688 (1996).
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.