MANFREDI, .Judge.
This is an appeal of a Decision of the Defendant Mohegan Tribal Employment Rights Commission dated May 6, 2002. The Defendant’s decision arises out of a Complaint filed by Kim Baker on February 21, 2002 in which she alleged that the Plaintiff had violated the Mohegan Tribal Employment Rights Ordinance, Number 99-2 Section VILA by hiring Robin Pelletier, a non-Native American for the position of Sports and Entertainment Support Services Manager rather than Ms. Baker who is a Native American.
The job in question is within the Sports and Entertainment Department, and the holder of the position reports to the Vice President of Sports and Entertainment. A job description enumerating job duties and minimum qualifications for the position was prepared by Paul Munich, the Vice President of Arena Operations. The position description was forwarded to the Tribe on January 18, 2002 and approved on February 11, 2002. The minimum qualifications for the position as listed in the position description that had been approved included “[t]hree years of progressive experience in the area of sports, entertainment and facility management.”
Of the people who applied for the position, only Robin Pelletier possessed the three years of experience set forth in the position description. The Complainant, Kim Baker did not possess the experience required by the position description.
See Ken Janus Exhibit E and Robert Soper Exhibit A of the record.
On March 20, 2002, the Commission held a hearing on Ms. Baker’s Complaint. As a result of that hearing, the Commission found in part:
“7) All specified job duties are of either a clerical* administrative or customer service nature. The minimum job qualifications for the position at issue require the job applicant to have budget, general/basic accounting and customer service knowledge.
8) The TERO Commission finds that there is no credible evidence that the position at issue requires:
a) Any specialized knowledge of
1) electrical, audio, visual or lighting equipment, or
2) contracts specific to sports, entertainment or facility management; or
b) The applicant to establish or determine the budget for any of the areas of accounts payable specified by Mr. Soper submitted as Exhibit B (which Exhibits have been included as part of this administrative record); or
e) Any scheduling, billing or cost accounting knowledge specific to the area of sports, entertainment, or facility management; or
d) The applicant organize, schedule or analyze any events; or
e) Any other knowledge, experience or training specific to the field of sports, entertainment or facility management.
9) Therefore, the TERO Commission finds that the Mohegan Sun has failed to demonstrate that the job qualifications criteria of ‘three years of progressive experience in the area of sports, entertainment and facility management’ is required by a business necessity and therefore such criteria selves as a barrier to the employment of a Native American.”
The Commission ordered that Kim Baker be awarded the job and receive reimbursement for lost wages or alternatively that Ms. Baker receive a comparable position acceptable to her no later than June 1, *529 2002. The Commission issued its decision on May 6, 2002.
Robin Pelletier, the person to whom the position was awarded and who now occupies the position, was never notified by the Commission of the Complaint and scheduled hearing.
The Mohegan Tribal Employment Rights Ordinance in effect at the time of the conduct complained of by Ms. Baker and during the proceeding held by the Commission was Tribal Ordinance Number 99-2, and it is to that Ordinance which the Court, will refer in this Decision.

DISCUSSION:

In its analysis of the facts and law presented by this case, the Court is mindful of the responsibility of the Defendant Commission to carry out the enumerated public policy of the Mohegan Tribe as set forth in the Tribal Employment Rights Ordinance. That policy includes the creation of employment and training opportunities for members of the Mohegan Tribe and other Native Americans.
This case presents issues of first impression for this Court in the interpretation and application of the Tribal Employment Rights Ordinance, and although the Court ordinarily affords deference given to the construction of statutes supplied by administrative agencies empowered by law to carry out a statute’s purposes, where there are pure questions of law, which have not been previously subject to judicial scrutiny, the Agency’s determination is not entitled to special deference. Angelsea Productions, Inc., v. Commission on Human Rights and Opportunities, 236 Conn. 681, 674 A.2d 1300 (Conn.1996)
Ordinance 99-2 defines minimum qualifications as follows:
“Those job related qualifications which are essential to the performance of the basic responsibilities for each employment position or contract, including any essential qualifications concerning education, training, and job related experience but excluding any qualifications relating to ability or aptitude to perform responsibilities in other employment positions or other contracts. Demonstrated ability to perform essential and basic responsibilities shall be deemed satisfaction of necessary qualifications.”
Section VIIA1 states:
“Irrespective of the qualifications of any non-Native American applicant or employee, any Native American applicant or Native American employee who meets the minimum qualifications required by employment position at issue whether it concerns the hiring, promotion, training, retention, reeall or any other element of said employment position, shall be selected by all covered employers before any non-Native American applicant or non-Native American employee. All covered employers shall be required to comply with all job posting requirements promulgated and issued by the Human Resources Department.”
Section VIIE of the Ordinance states:
“Covered employees are prohibited from instituting and utilizing job qualifications criteria and/or personnel requirements which serve as barriers to employment to Native Americans, unless such criteria and/or requirements can be demonstrated to be required by business necessity. If an employer fails to prove a criteria/requirement is required by business necessity, the employer will be required to eliminate the criterion or personnel requirement at issue. (SIC) Native American shall be considered qualified for employment in a position he/she meets the minimum requirements lor such position.”
*530 One of the critical issues in this case is the interpretation of Section VI1E of the Ordinance as set forth above. Neither of the parties have cited any cases, from Tribal Courts or otherwise, which interpret the application of this language. Likewise, the Court has been unable to find any decision interpreting the application of a Native American preference law under circumstances such as this case presents. Therefore, the Court must interpret the language of the statute under normal rules of statutory construction, and for assistance the Court will look to analogous situations presented by Federal Employment Law.
Rules of statutory construction require the Court to apply the ordinary meaning of terms and words unless the statute is ambiguous on its face. Where ambiguity exists, the Court must determine the legislative intent behind the words. The initial language which requires analysis in this case is the phrase “which serve as barriers to employment of Native Americans.” It is clear that unless the job qualification at issue fall within the meaning of the quoted phrase, the job preference statute or ordinance has no application. The Defendant Commission concluded that the qualification for progressive experience in the area of sports and entertainment was unnecessary to the job and that therefore it serves as barrier to the employment of a Native American, i.e., Kim Baker.
The difficulty with the Commission decision is twofold. First, it bootstraps the conclusion by finding that an unnecessary job qualification automatically results in a barrier to employment. Secondly, it concludes that the qualification in this case is a barrier to employment of an applicant, Kim Baker, but makes no conclusion as to whether or not the qualification is a barrier to the employment of “Native Americans.” Obviously, any particular job qualification can be a barrier to a particular Native American. The Ordinance however, requires that the job qualification act as a barrier to the employment of Native Americans, not to particular Native Americans. The plain meaning of this language is that the qualification in question must act as a barrier to Native Americans as a group and not just to individual Native Americans. Only when the qualification acts as a barrier to Native Americans as a group need the Commission determine whether or not the qualification is necessary to the job.
The first prong of the test under the statute then is to determine whether or not the job qualification at issue functions in some way to bar Native Americans as a group from occupying the position in question. If so, then the next inquiry is to determine whether or not the qualification is one necessary to the position. Only when both of these inquiries are answered affirmatively need the employer eliminate the criteria in question. The evil contemplated by the Ordinance is not an unnecessary job qualification being imposed upon applicants, but an unnecessary job qualification, which prevents Native Americans from qualifying for the position. Therefore, as indicated the first and primary inquiry is whether or not the qualifications serve as a barrier to Native Americans.
The question then becomes in a case such as this, what proof or evidence is required to show that a job qualification serves as a barrier to employment of Native Americans and how is that proof or evidence is to be allocated to the parties.
The Commission here looked at the job qualification, determined that it was unnecessary to the job description supplied, and found that because it was unnecessary to the job description, and the Native American applicant did not possess that *531 qualification, it therefore served as a barrier to her employment. It never made a finding that it served as a barrier to Native Americans.
The situation is somewhat analogous to that presented to the Supreme Court in 1971 in the case of Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). There the Supreme Court was presented with a case of first impression under Title VII of the Civil Rights Act of 1974. Essentially what the Court found in that case was that employment practices which operated to disqualify Blacks at a “substantially higher rate than white applicants” was illegal under Title VII if it could not be shown to be related to job performance. Similarly, here a job qualification must have the effect, whether intended or otherwise, of disqualifying Native Americans for a position at a substantially higher rate than non-Native Americans for it to fall within the restrictions of the Ordinance. Otherwise, the term “Native Americans” would be meaningless in the ordinance, since any job qualification could serve to disqualify a particular Native American, but only a qualification which bars Native Americans at a “substantially higher rate” than nonNative-Americans is impermissible under the ordinance.
In other words a job qualification is not a barrier to “Native Americans” simply because a single applicant does not fulfill the qualification. In order to find that a job qualification or criterion selves as a barrier to Native Americans there must be some demonstration in the record below that the qualification or criterion has a disproportionate effect upon Native Americans as a group.
If the Defendant Commission finds that a job qualification does serve as a barrier to the employment of Native Ameiieans, the employer is then required to prove that such a job qualification is a “business necessity.” The term “business necessity” is not defined in any tribal ordinance.
In Griggs v. Duke Supra, the Supreme Court discussed the issue of business necessity in connection with employment practices, which operated to exclude black people. Essentially, what the Court determined was that an employment practice is a business necessity if it is related to job performance. The Court there found that neither the requirement of a high school education nor passing: of a standardized general intelligence test were shown to be significantly related to successful job performance for employees'’within the operating department of the power plant. In that case the Court criticized the use of diplomas and use of testing as “fixed measures of capability,” and instead indicated that people without such certifications or degrees have been shown to be effective performers despite the lack of such certifications.
As pointed out above, Tribal Ordinance 99-2 defines minimum qualifications to include those “job related qualifications which are essential to the performance of the basic responsibilities for each employment contract, including .. . any job related experience.”
Since the Tribal Ordinance does not define the term business necessity, this Court must determine it’s meaning in order to apply the Ordinance to the facts. Utilizing the rational of Griggs v. Duke, Supra, this Court finds that a job qualification is a “business necessity” if: it is reasonably related to job performance and measures “the person for the job and not the person in the abstract.”
The Ordinance states if the employer cannot prove a qualification or criterion to be a business necessity then it must be eliminated. However, as indicated above *532 the test is two-fold. Only if the criteria bars Native Americans as a group and is not a business necessity may the Commis^ sion order that the qualification or criteria be eliminated. To hold otherwise would put the Commission in the position of reviewing every job qualification or criteria regardless, whether or not it had any impact upon Native American hiring or personnel practices.
The Court is in agreement that it is up.to the employer to prove business necessity by a preponderance of the evidence. Further, the Court is in agreement that the Commission has the right to determine the credibility of witnesses and evidence presented to it. The requirement to prove a business necessity by the employer does not arise unless the claimant has proved that the job qualification at issue is a barrier to “Native Americans.” In this case there has been no such show-⅛
Furthermore, the Court finds upon the record provided that the job qualification at issue is a “business necessity” as that term has been defined. A requirement of “three years progressive experience in the area of sports, entertainment, and facility management” is clearly reasonably related to a position as Sports and Entertainment Support Services Manager. The Ordinance itself in defining “minimum qualifications” recognizes experience as a basic factor in job performance. In fact, it is experience which, in the Court’s opinion, best measures a person for a job. Experience is probably the least abstract of job qualifications. Although, it Is not the only measure of a person’s ability to perform at a given function, it would be difficult to find a situation in which experience is not “reasonably related” to job performance.
The Court finds that the Defendant Commission erred in determining the job qualification for progressive experience was not a business necessity. Further, the Commission made no finding that the qualification served to bar “Native Americans” from employment.
Based on the foregoing, the decision of the Commission is reversed.