[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS CT Page 19
I. The Facts and Procedural History:
Vivian Cross (hereinafter the "plaintiff") applied to this court for temporary and permanent injunctions on December 9, 1996. Along with her application, she filed a Verified Complaint (hereinafter the "complaint"). According to the complaint, the plaintiff began working for the Hartford Public Schools in 1970. After a two year sabbatical, she returned to the school system in 1992, to serve as Coordinator of Student Services, an administrative position. According to the complaint, she was also appointed as a Special Education Coordinator in 1992.
The plaintiff later filed an affidavit of illegal discriminatory practices with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO"). The CHRO complaint was amended more than once, with the last amended complaint being dated September 24, 1996. The allegations raised to the CHRO included discrimination based on race, color, sex and age and were directed at the defendant Hartford Board of Education (hereinafter "Board"), the then acting or interim Superintendent, defendant Nicholas LaRosa (hereinafter "LaRosa") and two other administrators. Over the summer of 1996, the CHRO action resulted in an agreement between the plaintiff complainant and defendants. According to the plaintiff, the defendants agreed to appoint her to a position titled "Coordinator of Parents/Community School Services." She alleges that the appointment was made by the defendant LaRosa in August of 1996.
It is the plaintiff's position that during the months prior to her August, 1996 appointment, she had worked closely with representatives of the Massachusetts Mutual Life Insurance Company (hereinafter "Mass. Mutual") to secure funding for the development of a Parent Information Center. She alleges that she continued to inform defendant LaRosa about her progress. Allegedly, LaRosa updated the Hartford Board of Education on July 31, 1996, and informed them that grant money would be provided through an existing tax exempt charitable organization. The plaintiff alleges that in a meeting with LaRosa on August 1, 1996, the budget she had developed for the program, which included staff and clerical assistance, was approved. The $30,000 budget corresponded with the $30,000 pledged by Mass. Mutual. On August 5, 1996, Mass. Mutual sent a check to the plaintiff for $30,000, payable to the Foundation for Educational Advancement, CT Page 20 Inc. c/o Hartford Public Schools. The plaintiff developed a written announcement regarding the new program. It was allegedly presented to the Board's Parent and Community Involvement Committee and received the committee's endorsement.
The plaintiff alleges that on August 29, 1996, various members of the Board of Education, parents and a local newspaper reporter attended a meeting regarding the anticipated program. The plaintiff alleges that at the meeting, statements were made, falsely and maliciously, by two defendant board members including accusing the plaintiff of having disseminated false information about the program she was developing and altering a document and that the plaintiff was denied an opportunity to address the meeting. According to the complaint, the plaintiff was removed from her duties as Coordinator of Parents/Community School Services on August 30, 1996 and was forbidden from using the clerical services she had earlier been afforded as Coordinator. The plaintiff alleges other facts in support of her claims that the defendants violated her rights by these actions.
She also alleges that on October 29, 1996, she was suspended from employment with pay and without prejudice by LaRosa pending the outcome of an investigation of claims that she had attempted to misappropriate funds, engaged in unauthorized hiring and been insubordinate. The effective date of her suspension was October 30, 1996. The plaintiff also claims that the defendants have wilfully and maliciously defamed her in retaliation for having filed and prosecuted the CHRO complaint. She alleges that her reputation has suffered and will continue to suffer irreparable harm as a result of the defendants' continued mistreatment. It is also the plaintiff's theory that the alleged actions of the defendants are illegal retaliation in response to her CHRO claim. The claims are not accounted for separately in the complaint.
In her prayer for relief, the plaintiff seeks a temporary and permanent injunction, prohibiting the defendants from maintaining her suspension and from pursuing criminal allegations against her. She requests that the court enjoin any continued retaliatory libel, slander or defamation of her in violation of Connecticut General Statutes § 46a-60 (a). She also claims damages, punitive damages and attorney fees. Along with her complaint, the plaintiff has attached uncertified copies of the operative CHRO complaint, correspondence from or between the parties, and other miscellaneous documents. CT Page 21
The defendants moved to dismiss the plaintiff's complaint. The plaintiff filed Plaintiff's Opposition to Motion to Dismiss thereafter. The Defendants' Supplemental Memorandum in Support of Motion to Dismiss the Complaint followed and was replied to by Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss. The defendant responded by filing Defendants' Opposition to Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss. Offers of proof were filed by the plaintiff and defendant, respectively. The plaintiff also filed her own affidavit. At the hearing upon the Motion to Dismiss, neither counsel offered any witnesses or testimony beyond the affidavits.
Although not alleged in her complaint, the plaintiff's affidavit argued that "[i]t would be a complete waste of time for [her] to submit to [the Interim Superintendent] or to the Board jurisdiction over [her] complaint in this case. Further, the administrative process does not allow me to recover punitive damages." She wrote that she believes "the administrative remedy, such as it is, to be inadequate."[1]
The defendants claim that the court lacks subject matter jurisdiction to adjudicate the plaintiff's claims. They argue that the plaintiff's failure to exhaust the administrative remedies available to her pursuant to the collective bargaining agreement between the Board of Education and the plaintiff's union leaves the court without jurisdiction. They also argue, while conceding at oral argument that plaintiff did eventually obtain the CHRO release, that the court lacks subject matter jurisdiction by reason of plaintiff's failure to follow the statutory procedure and obtain the release before initiating the complaint. The complaint specifically alleges that the CHRO claim was still pending at the time of suit.
A copy of the collective bargaining agreement that was in effect between July 1, 1994 and June 30, 1996 was attached to the defendants' motion. Defendants also attached an affidavit stating that a collective bargaining agreement with substantially the same grievance procedure is in effect but was unavailable when the motion was filed. The affidavit stated that the new agreement had not yet been reduced to printed form.
In opposition to the motion to dismiss, the plaintiff argues that the motion was untimely, that it is sufficient if the CHRO release was obtained after suit was begun, that the collective bargaining agreement is not applicable because the agreement CT Page 22 submitted by the defendant expired before the acts alleged to have harmed the plaintiff occurred and that even if such an agreement did exist, it would not apply to the claims asserted by the plaintiff here.
II. Standard of Review for Motions to Dismiss:
A motion to dismiss attacks the jurisdiction of the court.Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). It "essentially [asserts] that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original.) Id. It is not "designed to test the legal sufficiency of a complaint in terms of whether it states a cause of action." Pratt v. Town of Old Saybrook,225 Conn. 177, 185, 621 A.2d 1322 (1993). "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . ." (Internal quotation marks omitted.) Sadlowski v.Manchester, 235 Conn. 637, 645-46 n. 13, 663 A.2d 1314 (1995). "The plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." Fink v. Golenbock,238 Conn. 183, 199 n. 13 (1996). "[P]arties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." Jolly Inc. v. Zoning Board of Appeals, 237 Co. 184, 192, 676 A.2d 831 (1996).
"`It is axiomatic that once the issue of subject maker jurisdiction is raised, it must be immediately acted upon by the court.' . . ." (Citations omitted.) Federal Deposit InsuranceCompany v. Peabody, 239 Conn. 93, 99, 680 A.2d 1321 (1996). "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). The motion admits all facts that are well pleaded and invokes the existing record. Barde v. Boardof Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "Where . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Emphasis added; citations omitted; internal quotation marks omitted.) Id.
III. The Issues
The motion to dismiss raises issues that may be categorized CT Page 23 as follows: 1) jurisdiction to enjoin suspension of plaintiff from employment and defendants from alleging wrongdoing by plaintiff 2) jurisdiction to consider alleged retaliatory conduct in violation of § 46a-60 (a). As discussed below, these different claims, the former at common law and equity, and the latter statutory, raise different legal issues.
 1. Jurisdiction to enjoin suspension of plaintiff from employment and allegations of wrongdoing.
It is obvious from a fair reading of the complaint that the events surrounding and leading up to plaintiff's suspension form the core of her action and that the other requested remedies pertaining to allegations of wrongdoing are ancillary to same. The issue has been raised whether the plaintiff failed to exhaust the administrative remedies available to her.
"`It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter . . . .' The exhaustion doctrine `reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment. . . . It also relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review . . . ." (Citations omitted.) Simko v. Ervin,234 Conn. 498, 503, 661 A.2d 1018 (1995). "The purpose of the exhaustion requirement is [also] to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it . . . . [I]t would deprive employer and union of the ability to establish a uniform . . . method for orderly settlement of employee grievances." (Internal quotation marks omitted.) Labbe v. PensionCommission, 229 Conn. 801, 811, 643 A.2d 1268 (1994) (discussing, in particular, the need for protection of collective bargaining agreements that provide grievance remedies).
"Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly carved out several exceptions from the exhaustion doctrine . . . . We CT Page 24 have recognized such exceptions, however, only infrequently and only for narrowly defined purposes . . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate . . . ." (Citations omitted; internal quotation marks omitted.) Hunt v. Prior, 236 Conn. 421, 432, 673 A.2d 514 (1996). "It is futile to seek [an administrative] remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings . . . ." (Citations omitted; internal quotation marks omitted.) Id. 433. "It is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . an administrative remedy, in order to be `adequate,' need not comport with the plaintiffs' opinion of what a perfect remedy would be.Connecticut Mobile Home Assn. Inc. v. Jensen's Inc.,178 Conn. 586, 590, 424 A.2d 285 (1979); see also Savoy Laundry. Inc. v.Stratford, 32 Conn. App. 636, 630 A.2d 159, Cert. denied,227 Conn. 931, 632 A.2d 704 (1993) (administrative remedies available to plaintiff under statute not inadequate, despite fact that complaint sought relief, including punitive damages and attorney's fees, not available under statutory scheme, where essence of plaintiff's claim involved matter within authority vested in administrative agency)." Hunt v. Prior, supra,236 Conn. 434-35. "A contrary conclusion would allow an employee covered by a collective bargaining agreement to circumvent the contract's grievance mechanism simply by seeking relief outside the scope of that agreement. Such a result would undermine the state's policy favoring recourse to contract grievance procedures as a means of dispute resolution . . . . and would defeat the express intent of the parties to the collective bargaining agreement that the grievance mechanism be utilized to settle such claims and disputes as expeditiously as possible." (Citations omitted.) Id. If the plaintiff has available to her a grievance mechanism pursuant to a collective bargaining agreement, that provides her with a full, fair and immediate opportunity to challenge the defendants' actions, she has an adequate remedy at law. Id. 436.
The court must determine whether the plaintiff could have availed herself of grievance procedures pursuant to the collective bargaining agreement (hereinafter the "agreement") between her employer, the Hartford Board of Education (hereinafter the "board"), and her union, the Hartford Principals' and Supervisors' Association (hereinafter the "union"). "Where . . . the motion [to dismiss] is accompanied by CT Page 25 supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988).
The defendants attached to their motion a copy of a collective bargaining agreement entered into by the union and the board. By its terms, the agreement was effective between July 1, 1994 and June 30, 1996, and governed matters of concern to union members. The defendants also attached an affidavit representing that a new agreement was in place for the current term but was unavailable because it had not been reduced to writing at the time the defendants submitted their Motion to Dismiss. The affidavit also certified that the grievance procedure had not changed from that contained in the attached 1994-96 agreement. The plaintiff does not expressly argue that no grievance procedure was or is available to her pursuant to the agreement or any subsequent agreements between her union and the board. In her opposing memoranda, the plaintiff argues against being required to exhaust the grievance procedure because the agreement submitted by the defendants had expired before the present litigation commenced. She contends that, even if a subsequent binding collective bargaining agreement exists, and its terms regarding grievance procedures are substantially the same as the 1994-96 agreement, the agreement would be inadequate to resolve her claims.
The procedures established by the agreement, if employed, would have provided the plaintiff with a full, fair and immediate opportunity to challenge the defendants' actions; see Hunt v.Prior, supra, 236 Conn. 436; therefore it provided her with an adequate remedy at law. Id. "It is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . an administrative remedy, in order to be `adequate,' need not comport with the plaintiffs' opinion of what a perfect remedy would be. Connecticut Mobile Home Assn., Inc. v.Jensen's Inc., 178 Conn. 586, 590, 424 A.2d 285 (1979). The plaintiff is a member of the Hartford Association of Principals and Supervisors and had used the grievance procedure on other occasions. Article V of the Collective Bargaining Agreement defines grievance so broadly as to encompass plaintiff's claims, including the issues pertaining to her suspension. The grievance procedure requires that a plaintiff first try to resolve her complaints by raising her concerns directly to the other CT Page 26 employee(s) against whom she feels aggrieved. Collective Bargaining Agreement, Article V (1). If that step is unsuccessful, the complainant is required to submit her complaint in writing, within 10 days, to an involved superior. If that step does not result in settlement of the dispute, the aggrieved party has 10 days within which to appeal the resolution, in writing, to the superintendent or his or her designated representative. The superintendent is required then to meet with the employee and a union representative within 10 days of receiving the appeal and must provide the complainant with a written decision within 10 days thereafter. If that procedure is not satisfactory, the union may submit the grievance for binding arbitration. This procedure, if tried, might have provided the plaintiff with the relief she was seeking, reinstatement. The procedure would have provided her with a "full, fair and immediate opportunity to challenge the defendants' actions, [therefore her] claim of an inadequate administrative remedy must fail." Hunt v. Prior, supra,236 Conn. 435.
The plaintiff also initially suggested that the grievance procedure provided by the collective bargaining agreement is inconsistent with the city charter. However, that argument was withdraw at oral argument because of the repeal of the special act establishing that provision of the city charter.
The defendants' submission that the grievance procedure was available to the plaintiff has not been contradicted. In her own affidavit, the plaintiff stated that "[i]t would be a complete waste of time for [her] to submit to [the Interim Superintendent] or to the Board jurisdiction over [her] complaint in this case." In effect, the plaintiff has admitted that administrative remedies were available to her and that she did not employ them because, in her opinion, they would not serve her interests.
It is apparent that the plaintiff has not exhausted or even attempted to use the administrative remedies at her disposal. The court, therefore, finds that it lacks jurisdiction to enjoin the plaintiff's suspension until such time as the administrative remedies are exhausted, or are, at least, attempted. See Hunt v.Prior, supra, 236 Conn. 431 ("[i]t is well-settled under both federal and state law, that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures."). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case . . . ." Concerned Citizens of Sterling v. Sterling,
CT Page 27204 Conn. 551, 557, 529 A.2d 666 (1987). The court has no jurisdiction to hear those matters that could have been raised through the administrative remedies discussed above, including the plaintiff's suspension, and defendants' allegations of wrongdoing by plaintiff.[2]
 2. Jurisdiction to consider claims under § 46a-60 (a)
By their Motion to Dismiss, the defendants raised the issue of the court's jurisdiction by initially arguing that the plaintiff had a pending claim with the CHRO that had not been released and that the CHRO remedy is an administrative remedy that the plaintiff should have exhausted before commencing this action. At oral argument, it was conceded that the necessary CHRO release was obtained after suit was initiated. But the question of subject matter jurisdiction in light of plaintiff's failure to obtain the release prior to bringing suit was raised.[3]
General Statutes § 46a-100 provides in part that "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with Section 46a-82, alleging a violation of Section 46a-60 and who has obtained arelease from the commission in accordance with Section 46a-101, may also bring an action in the superior court . . ." (Emphasis added.) Id. "No action may be brought in accordance with Section46a-100 unless the complainant has received a release from the commission . . ." (Emphasis added.) Section 46a-101 (a).
The plaintiff did not allege that her complaint with the CHRO was released. On the contrary, her complaint alleges that the CHRO proceedings were ongoing at the time it was filed. The plaintiff has not shown that the jurisdiction of the CHRO was released prior to her commencement of this action, and has conceded the contrary.
"Well established principles of statutory construction govern [the court's] determination of whether a statutory time period is mandatory or directory. [The court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, [the court] look[s] to the words of the statute itself." (Ellipses in original; citations omitted; internal quotation marks omitted.)Doe v. Statewide Grievance Committee, 240 Conn. 671, 680 (1997). "Our rules of statutory construction are clear. . . . The meaning of [a] statute must, in the first instance, be sought in the language in which the act is framed. . . . If the language of the CT Page 28 statute is clear, it is assumed that the words themselves express the intent of the legislature. . . . Where [a] statute presents no such ambiguity, we need look no further than the words themselves which we assume express the intention of the legislature. . . ." (Citations omitted; internal quotation marks omitted.) Chotkowskiv. State, 240 Conn. 246, 277, 690 A.2d 368 (1997).
Our Supreme Court recently decided that certain time restrictions, imposed by language contained in the CFEPA, were mandatory. See Angelsea Productions. Inc. v. CHRO, 236 Conn. 681,674 A.2d 1300 (1996). The court stated that "[t]he test we have adopted for determining whether such a statutory requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial to matters of convenience or substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory. . . . Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . . but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute. . . ." (Citations omitted; internal quotation marks omitted.) Angelsea Productions. Inc. v.CHRO, supra, 236 Conn. 690.
The statutory provisions at issue before this court and the provisions interpreted by the court in Angelsea (C.G.S. §§46a-83 and 46a-84) are part of the same statutory scheme, namely the CFEPA. The provisions relevant to this case state:
 "§ 46a-100 Discriminatory employment practices. Cause of action upon release from commission. Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82, alleging a violation of section 46a-60
and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court. . . .
 "§ 46a-101 Release of pending complaint alleging discriminatory employment practice. Time period for bringing action after release.
(a) No action may be brought in accordance with section 46a-100
unless the complainant has received a release from the commission in accordance with the provisions of this section. . . . (e) Any action CT Page 29 brought by the complainant in accordance with section 46a-100
shall be brought within ninety days of the receipt of the release from the commission."
The words of these statutes are not ambiguous and there is little need to look beyond their plain meaning to recognize that they permit an aggrieved complainant to sue in the Superior Court but circumscribe the right to sue by imposing mandatory preconditions.
The statutes are clear in requiring that a release be obtained as a precondition to suit. Specifically, they restrict suit to one who "has obtained a release from the commission in accordance with section 46a-101, . . ." Section 46a-101 is entitled, in part, "Time period for bringing action after release." and provides explicitly at subsection (a) "No action may be brought . . . unless the complaint has received a release . . ." Public Act 96-241 (1)(b), under which plaintiff obtained her release states "Upon receipt of a release . . . the complaint may bring a civil action in accordance with . . . section 46a-100,46a-101 . . ." Nowhere is the bringing of a suit prior to obtaining a release authorized or contemplated.
Furthermore, the interpretation of sections 46a-100 and46a-101 is controlled by the recent holding in Angelsea. The Angelsea
test inquires as to what the purpose of the statute is and whether the statutory requirement relates to a matter of convenience, in which case the requirement is directory, or whether it relates to a matter of substance, in which case the requirement is mandatory. Angelsea Productions. Inc. v. CHRO,supra, 236 Conn. 690. The Court in Angelsea held that the provisions under consideration there, pertaining to time restraints placed on CHRO officials, were substantive and mandatory in nature, because controlling the life span of complaints of discrimination was one of the statute's primary functions.
The procedural anti-discrimination provisions of C.G.S. §§46a-100 and 46a-101 share the same purpose as sections 46a-83 and46a-84. Both provide avenues for relief to complainants and both use procedural mechanisms to control the manner and times in which relief may be pursued. Sections 46a-83 and 46a-84 enable complainants to seek administrative remedies and sections 46a-100
and 46a-101 control transitions from the administrative forum to trial courts of law. The latter provisions cannot be construed as CT Page 30 having been enacted merely for the sake of convenience. Rather, the restricted and structured access to court is "the essence of the purpose to be accomplished." Angelsea Productions. Inc. v.CHRO, supra, 236 Conn. 690, and it's preconditions matters of substance and mandatory.
The requirement that plaintiff obtain a release prior to commencing suit under CFEPA is such a clear and mandatory precondition. Plaintiff has failed to comply with it.
Where a plaintiff initiates suit in the expectation or mere hope of later receiving the release, he or she violates the clear mandatory language of the statute and defeats the statutory scheme to limit suit in superior court to circumstances where the agency initially charged with evaluating the claim (CHRO) has both determined it cannot resolve the claim in the immediate future (§ 46a-101 (c) and P.A. 96-241 (1)(b)) and has already disposed of the administrative proceedings (§ 46a-101 (d)). Such a plaintiff submits respondents, the court and the agency to dual, simultaneous proceedings before both the CHRO and Superior Court, with attendant costs and inefficiency, and also effectively deprives CHRO of it's discretion in issuing releases to sue under § 46a-101 (c).
Obtaining a release after the fact, as here, does not "cure" the failure to comply with §§ 46a-100 and 46a-101. The release is a precondition, not a postcondition, to bringing suit, the statute requiring the release not merely to maintain suit but to initiate it. Plaintiff has still failed to comply with a precondition to suit under CFEPA.
Our courts have consistently held that failure to comply with the conditions established by the CFEPA "forecloses [a plaintiff's] access to judicial relief, because it [deprives] the trial court of jurisdiction to hear his complaint." Sullivan v.Board of Police Commissioners, 196 Conn. 208, 218, 491 A.2d 1096
(1985). See also Shyrer v. Associated Pulmonologists of WesternConnecticut, Superior Court, judicial district of Danbury, Docket No. 319434, 16 CONN. L. RPTR. 539 (April 15, 1996, Moraghan, J.). To the extent that plaintiff's complaint raises claims under §46a-60, the court lacks jurisdiction. Whenever the court finds that it is without jurisdiction, it is bound to dismiss the case. Concerned Citizens of Sterling v. Sterling, supra,204 Conn. 557.
For the reasons stated above, the defendants' Motion to CT Page 31 Dismiss is granted and the complaint is dismissed.
JAMES T. GRAHAM JUDGE, SUPERIOR COURT