## MARY CUYLER *v.* BOARD OF EDUCATION OF THE CITY OF DANBURY

Superior Court   Judicial District of  File No. CV950324733S
         Fairfield

Memorandum filed December 17, 1998[*]

*Zanella, Gilardi & Boath*, for the named plaintiff.

*Wofsey, Rosen, Kweskin & Kuriansky*, for the plaintiff Bonnie Lieberman.

*Sullivan, Schoen, Campane & Connon*, for the defendant.

MELVILLE, J. The plaintiff, Mary Cuyler, filed a two count complaint against the defendant, the board of education of the city of Danbury, on July 12, 1995. Cuyler alleges in count one that in August, 1990, when

---

[*] Affirmed. *Cuyler* v. *Board of Education*, 59 Conn. App. 339, 757 A.2d 635 (2000).

she was hired by the defendant to be a teacher, a collective bargaining agreement (agreement) was in place. Cuyler alleges that pursuant to the agreement, the defendant had the sole discretion in determining starting salaries (starting step) for newly hired teachers. Cuyler also alleges that the agreement was amended (revision of policy 4-113) in February, 1987, to allow for the granting of credit for each prior year of teaching experience. Cuyler further alleges that at the time she was hired, she had thirteen years of prior teaching experience, but was never informed of the existence of policy 4-113. Instead, Cuyler was only given credit for each two years of prior teaching experience and was hired at step six when she should have been hired at step nine. Cuyler alleges that this action by the defendant constitutes a breach of policy 4-113 and that she has no available administrative remedy. Cuyler seeks a declaratory judgment in count two. Cuyler has been joined by additional plaintiffs with similar claims against the defendant.[1]

The defendant has filed a motion for summary judgment, arguing that all of the plaintiffs have failed to exhaust grievance procedures and remedies available under the agreement. Cuyler has filed an objection to

[1] The following plaintiffs were added to this case by order of the court, *Rush, J.*, on December 18, 1997, and are represented by Cuyler's attorney: Susan Abner; Claudia Anderson; Joyce Auchincloss; Camela Calafiore; Geraldine Carley; Lisa Carriero; Linda Chapman; Michael Clarke; Wayne Covill; Mary Cukierski; Nancy DiPerrio; Donna Erickson; Karen Griswold; Lynn Henriquez; Mary Ann Hinckley; Robert Hinz; Regina Huber; Richard Kasiewicz; Dorothy Lewandowski; Lona Lopez; John Mackiewicz; Kathleen Miville; Maria Ortner; Douglas Oster; David Perrone; Angela Pennucci; Linda Pollard; Ruth Poole; Carolyn Ruffles; Annie Sackerson; Ann Salamone; Gail Sansolo; Marlene Serby; Barbara Steck; Barbara Talarico; Edie Thomas; Richard Vaughn; Ellen Vogel; Peggy Weiss; and Ferris White. Also added as plaintiffs are Mary Henebry, Seth Stevens and Ellen Young, who were added by order of the court, *Rush, J.*, on February 9, 1998. An additional plaintiff, Bonnie Lieberman, filed an appearance with the court on October 27, 1997, under separate representation.

the defendant's motion, and the matter was heard by the court on October 19, 1998.

Practice Book § 384, now Practice Book (1998 Rev.) § 17-49, provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 381, 713 A.2d 820 (1998).

The defendant argues that because Cuyler's claims involve issues under the agreement, she was required to exhaust available administrative remedies provided thereunder, in particular, the filing of a grievance. The defendant also argues that although Cuyler has alleged that she had no administrative remedy available based upon advice received from her union, Cuyler cannot bring an action against the defendant because she has not alleged that the union breached its duty of fair representation and has not named the union as a defendant. The defendant contends that Cuyler's failure to utilize available grievance procedures provided for in the agreement was the result of her own actions or the actions of her union.[2]

---

[2] The defendant's arguments against Cuyler apply equally to the other plaintiffs.

Cuyler argues that a genuine issue of material fact exists as to whether she was excused from exhausting her administrative remedies via the grievance procedures under the agreement because the issue in dispute was not covered under the agreement and resort to the grievance procedures would have been futile. Cuyler contends that she contacted the union president, Donald Karcheski, who investigated her claims and consulted with the union's legal counsel, William Dolan, who was of the opinion that the issue raised by Cuyler was not covered under the agreement.

Cuyler also contends that the defendant intended policy 4-113 to be a separate and distinct policy from the provisions of the agreement. As a result, Cuyler would be excused from exhausting the grievance procedures under the agreement since the defendant's failure to follow policy 4-113 would not constitute a violation or variation of the terms of the agreement or the interpretation, meaning or application of the agreement. Therefore, Cuyler argues, there is a genuine issue of material fact as to the intent of the defendant when it drafted the agreement and policy 4-113. In addition, Cuyler argues that even if policy 4-113 is covered under the grievance procedures of the agreement, demand under the present circumstances would be futile. Cuyler contends that when she attempted to initiate a grievance under the agreement, she was informed by the union that the grievance would not be fruitful.

Copies of past agreements, as well as the agreement currently in place, have been submitted by the defendant. The agreements contain the following language: "This Agreement shall constitute the policy of the [defendant] and the Association in the subject area covered by the Agreement for the duration of this Agreement, unless changed by mutual assent of the parties to this Agreement. Such mutually consented to

changes shall be in writing. Previously adopted policies, rules or regulations in conflict with this Agreement are superseded by this Agreement." The copies of the agreements submitted show that salary steps were part of the terms of the agreements.

Cuyler relies upon policy 4-113, which was adopted on August 10, 1983, and revised on February 11, 1987. Policy 4-113 provides in relevant part: "Credit for . . . prior teaching experience shall be granted on the following basis: year-for-year, for up to seven years of experience, i.e., each year of experience equaling 1 step on the salary schedule for up to seven years;—one additional credit year for all remaining years of prior experience, i.e., 8 or more years of experience equaling one step on the salary schedule; no teacher beginning service in Danbury shall be granted more than 8 years of credit for prior teaching experience, except as provided by [the defendant] policy."

The agreements each provide: "The [defendant] will have sole discretion in determining the starting salary (starting step) of a newly hired teacher . . . ." Policy 4-113 provides: "Credit for such prior teaching experience *shall be granted* in accordance with the guidelines set forth therein." (Emphasis added.)

The language of policy 4-113 mandating how the defendant is to calculate prior teaching experience conflicts with the language of the agreements that gives the defendant broad discretion to determine a newly hired teacher's starting salary.[3] The mandate of policy 4-113 limits the defendant's discretion to determine the starting salary for a newly hired teacher. As Cuyler

[3] The defendant's discretion is limited only to the extent that under the agreements, no teacher will be paid at a starting salary less than that set for the beginning step on the schedule to which the teacher is assigned; it must give newly hired teachers credit for military service; and no teacher will be credited with more experience than he or she actually has.

states, the defendant's "adoption of Policy 4-113 created an *inconsistency* between the language of [the agreement], which purports to give discretion to the [defendant] in setting salaries, and the language of Policy 4-113, which *mandates* credit for past teaching experience in setting salaries." (Emphasis added.) Cuyler's position that despite the inconsistency, "Policy 4-113 is not superseded by the [agreement] as it does not conflict with its terms," because the agreement "simply provides additional guidelines to the [defendant's] discretion," is unpersuasive. The guidelines in policy 4-113 limit the defendant's discretion by mandating credit for certain steps on the basis of prior teaching experience and, therefore, policy 4-113 conflicts with the agreement. Moreover, if policy 4-113 is merely a guide for the defendant rather than a mandate by which the defendant was required to award credit for prior teaching experience, then Cuyler's claim that the defendant was obligated to give her more credit under policy 4-113 is illogical.

Furthermore, policy 4-113 is a previously adopted policy that conflicts with the agreements and is, therefore, superseded by the agreements. Accordingly, Cuyler's argument that she was free to bring a claim under policy 4-113, rather than pursuant to the agreement, is without merit. Because Cuyler's claim falls under the agreements, the court must now determine whether Cuyler has complied with and exhausted the grievance procedures provided therein.

"The failure to exhaust administrative remedies implicates the subject matter jurisdiction of the court." *Johnson* v. *Dept. of Public Health*, 48 Conn. App. 102, 108, 710 A.2d 176 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675

A.2d 845 (1996). Therefore, the defendant's exhaustion argument, although presented in the context of a motion for summary judgment, should be treated as a motion to dismiss.

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." (Internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 431, 673 A.2d 514 (1996). "The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements." (Internal quotation marks omitted.) Id., 431–32.

"One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. . . . An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." (Citations omitted; internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 467, 717 A.2d 1177 (1998).

The agreement between the defendant and the union provides a grievance procedure for the resolution of

claims of alleged violations or variations from the provisions of the agreement, or the interpretation, meaning or application thereof. An aggrieved party can also bring a grievance concerning claims that the defendant failed to act in good faith in exercising its judgment or discretion as provided in the agreement. Neither Cuyler nor the union has filed a grievance under the agreement. None of the other plaintiffs joining this matter has filed a grievance or had the union file a grievance for them contesting their placement on the salary schedule.

Cuyler has submitted the affidavit of William Dolan, legal counsel to the Connecticut Education Association. Dolan avers that he discussed Cuyler's claim with the president of the union, and that after considering the language of the agreement and policy 4-113, he concluded that the claim did not involve the interpretation or application of the language of the agreement and, therefore, the matter was not appropriate for resolution through the grievance process. Cuyler has also submitted the affidavit of the union president, Donald Karcheski. Karcheski avers that at a meeting with Cuyler and John Eriquez, director of personnel and administrative services for the defendant, Eriquez refused to acknowledge that policy 4-113 had any application to Cuyler's case. Karcheski also avers that Cuyler brought the matter to his attention, after which he consulted Dolan to determine whether a grievance should be filed. Based upon discussions with Dolan, Karcheski advised Cuyler that because policy 4-113 was not part of the agreement, there was no basis for filing a grievance on her behalf.

This court lacks jurisdiction over this matter because the plaintiffs have failed to exhaust their available administrative remedies. It is undisputed that there has been no grievance filed by any of the plaintiffs regarding their placement on the salary schedule.

Because they decided not to file a grievance pursuant to the agreement, the plaintiffs cannot show that they

have attempted to exhaust their administrative remedies as required under *Hunt* v. *Prior*, supra, 236 Conn. 431. See *Cross* v. *Larosa*, Superior Court, judicial district of New Britain, Docket No. 477442 (January 13, 1998) (21 Conn. L. Rptr. 241, 244) (plaintiff's averment that it would be complete waste of time to bring grievance under collective bargaining agreement did not constitute attempt to exhaust administrative remedies). Cuyler's decision to forgo the grievance procedures provided under the agreement was apparently based on the legal opinion of Dolan, who is not legal counsel for the union or for any of the other parties here.[4] In addition, Cuyler has not indicated what Dolan's opinion was based upon other than conversations with Karcheski. Cuyler's position is that she can rely on an unfounded legal opinion rendered by someone other than the defendant, and then unilaterally decide that an attempt to file a grievance would be futile. This position is untenable. If allowed, such a position would nullify the policy reasons behind the exhaustion doctrine, as all allegedly aggrieved plaintiffs could decide that they had exhausted their available remedies after meeting informally with their union representative and management and being informed that they would not be victorious at a grievance hearing.

Further, the plaintiffs' actions cannot be considered to have exhausted all available administrative remedies provided pursuant to the agreements. See *Mefferd* v. *Middletown*, Superior Court, judicial district of Middlesex at Middletown, Docket No. 069767 (November 3, 1995) (none of procedures available pursuant to collective bargaining agreement was undertaken, and by not invoking these remedies prior to bringing action before

---

[4] Dolan is legal counsel to the Connecticut Education Association. The union here is the National Education Association-Danbury. The plaintiffs have not demonstrated that Dolan in any way works for or represents the National Education Association-Danbury.

trial court, plaintiff failed to exhaust available administrative remedies); *Gilleran* v. *Manchester*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 455667 (June 16, 1994) (9 C.S.C.R. 771) (court held that letter from town's general manager to plaintiff's attorney did not provide sufficient evidence that attempt to pursue administrative remedy provided would be futile where letter did not indicate appeal would be denied if pursued).

The court must dismiss the plaintiffs' action for lack of subject matter jurisdiction because the plaintiffs have not attempted to exhaust their administrative remedies under the agreement. In addition, the plaintiffs have failed to show that an attempt to utilize the grievance procedure provided for under the agreement would have been futile.

This action is hereby dismissed.