******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## MCHENRY SOLAR, LLC *v.* TOWN OF HAMPTON
### (AC 47636)

Cradle, C. J., and Suarez and DiPentima, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment denying its motion for summary judgment in its underlying tax appeal against the defendant on its claim that it was entitled to judgment as a matter of law that certain personal property that it used to generate electricity was exempt from taxation pursuant to statute (§ 12-81 (76)). The plaintiff claimed that the court incorrectly concluded that it was not entitled to the exemption because the generation of electricity is not manufacturing within the meaning of § 12-81 (76). *Held*:

The trial court properly denied the plaintiff's motion for summary judgment, as, considering the legislative history of the statute and the construction of the statutory scheme as a whole, the generation of electricity is not manufacturing within the meaning of § 12-81 (76) and, thus, legislative intent renders businesses engaged in the generation of electricity ineligible for the manufacturing exemption from the property tax.

Argued June 3—officially released September 23, 2025

*Procedural History*

Appeal from the decision of the defendant's tax assessor denying the plaintiff's request for an exemption from taxation on certain of the plaintiff's personal property, brought to the Superior Court in the judicial district of Windham and transferred to the judicial district of New Britain, where the court, *Hon. Henry S. Cohn*, judge trial referee, denied the plaintiff's motion for summary judgment, and the plaintiff appealed to this court. *Affirmed.*

*Thomas Melone*, for the appellant (plaintiff).

*Michael C. Collins*, with whom was *Thomas A. Plotkin*, for the appellee (defendant).

*Opinion*

CRADLE, C. J. In this tax appeal, the plaintiff, McHenry Solar, LLC, appeals from the trial court's

denial of its motion for summary judgment in which it argued that it was entitled to judgment as a matter of law on its claim that certain personal property that it uses to generate electricity is exempt from taxation pursuant to General Statutes § 12-81 (76),[1] which provides for the exemption of machinery and equipment used for manufacturing.[2] On appeal, the plaintiff claims that the court incorrectly concluded that it was not entitled to the exemption pursuant to § 12-81 (76) because the generation of electricity is not manufacturing within the meaning of the exemption. We affirm the judgment of the trial court and remand the case for further proceedings consistent with this opinion.[3]

The following facts, which either were found by the trial court or are undisputed in the record, and procedural history are relevant to our disposition of this appeal. The plaintiff is the owner of certain personal

[1] General Statutes § 12-81 (76) provides in relevant part: "Effective for assessment years commencing on or after October 1, 2011, machinery and equipment, including machinery and equipment used in connection with biotechnology [shall be exempt from taxation]. For purposes of this subdivision, 'machinery' and 'equipment', and 'biotechnology' have the same meanings as provided in subdivision (72) of this section. . . ."

[2] "Ordinarily, the denial of a motion for summary judgment is not an appealable [final] judgment." *Factor King, LLC* v. *Housing Authority*, 197 Conn. App. 459, 475, 231 A.3d 1186, cert. denied, 335 Conn. 927, 234 A.3d 979 (2020). In the present case, on January 19, 2024, the plaintiff moved the trial court, pursuant to Practice Book § 61-4 (a), to make a written determination that the issues related to the manufacturing property tax exemption resolved by the trial court's summary judgment ruling were of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified. The trial court granted the motion on March 28, 2024. Thereafter, on April 17, 2024, the plaintiff filed a preappeal motion with this court asking that the Chief Judge of the Appellate Court concur with the trial court's determination that the plaintiff be allowed to immediately appeal from the summary judgment ruling pursuant to Practice Book § 61-4 (a). On May 9, 2024, then Chief Judge Bright granted the plaintiff's motion.

[3] In its complaint, the plaintiff also challenged the defendant's assessment of its property as excessive. That claim is unaffected by the summary judgment proceedings and remains pending.

property (property) located at its "solar facility" in Hampton. The property consists of various equipment[4] used by the plaintiff to generate solar electricity, which the plaintiff then sells to Connecticut Light & Power Company.

On September 30, 2022, the plaintiff, pursuant to General Statutes § 12-119,[5] commenced the underlying tax appeal against the defendant, the town of Hampton, challenging the defendant's tax assessment on its property. The plaintiff claimed that the tax had been wrongfully assessed because its property is used for the "manufacture of electricity" and, therefore, is exempt from taxation pursuant to § 12-81 (76). In the alternative, the plaintiff claimed that the tax assessed on its property was "manifestly excessive and could not have been arrived at except by disregarding the statutes for determining the valuation of the personal property."

On April 18, 2023, the plaintiff filed a motion for summary judgment on the issue of the tax exemption, claiming there was no genuine issue of material fact that its property constituted machinery and equipment used for manufacturing, thereby "entitl[ing] the plaintiff to the manufacturing exemption pursuant to . . . § 12-81 (76)." On June 16, 2023, the defendant filed an objection to the plaintiff's motion, disputing that the generation of electricity constitutes manufacturing for purposes of the exemption under § 12-81 (76).

[4] Specifically, the property is comprised of "modules, inverters, racking [system], [Distribution Automation Systems] controls, camera [system], weather monitoring system, transformer, revenue meter, switchboard, wiring and switch enclosures."

[5] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town . . . in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may . . . make application for relief to the superior court for the judicial district in which such town . . . is situated. . . ."

On January 2, 2024, the court, *Hon. Henry S. Cohn*, judge trial referee, issued a memorandum of decision denying the plaintiff's motion for summary judgment. The court first noted that § 12-81 (76) exempts from personal property taxes "machinery and equipment" and provides that those terms shall have the same meaning as provided in subsection (72).[6] Section 12-81 (72) (A) (i), in turn, provides in relevant part that "[m]achinery and equipment means tangible personal property which is installed in a manufacturing facility[7] . . . and the predominant use of which is for manufacturing, processing[8] or fabricating[9] . . . ." (Footnotes added; internal quotation marks omitted.) Section 12-81 (72) (A) (iii) defines manufacturing as "the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail. . . ."

In construing the provisions at issue, the court noted that "neither party argues that the language of the statute is plain or unambiguous" and, therefore, considered "extratextual evidence to the extent it is useful." The

[6] We note that both § 12-81 (72) and (76) provide exemptions for machinery and equipment used for manufacturing. Subsection (72), however, "is effective for assessment years commencing on or after October 1, 2002, but prior to assessment years commencing on or after October 1, 2011," whereas subsection (76) is "[e]ffective for assessment years commencing on or after October 1, 2011." Because the plaintiff challenges the tax assessed on its property for the assessment year commencing October 1, 2022, it claims the exemption pursuant to § 12-81 (76).

[7] "Manufacturing facility" means "that portion of a plant, building or other real property improvement used for manufacturing, processing or fabricating . . . ." General Statutes § 12-81 (72) (A) (ii).

[8] "Processing" means "the physical application of the materials and labor in a manufacturing process necessary to modify or change the characteristics of tangible personal property." General Statutes § 12-81 (72) (A) (v).

[9] "Fabricating" means "to make, build, create, produce or assemble components or tangible personal property work in a new or different manner . . . ." General Statutes § 12-81 (72) (A) (iv).

court first observed that the legislature had added the current definition of manufacturing to § 12-81 (72) in 1992; see Public Acts 1992, No. 92-193, § 1 (Public Act 92-193); and that, prior to the enactment of Public Act 92-193, our Supreme Court, in *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992), had held that the generation of electricity is not manufacturing within the meaning of the Sales and Use Taxes Act, General Statutes § 12-406 et seq. The court further observed that "Public Act 92-193 unified the definition of 'manufacturing' for property tax exemptions and sales tax exemptions." The court explained: "Public Act 92-193 made the definition of 'manufacturing' the same for purposes of the Sales and Use Taxes Act . . . and the personal property tax exemption under § 12-81. The legislature is presumed to [have been] aware of [our Supreme Court's] interpretation of the Sales and Use Taxes Act [when it adopted Public Act 92-193] . . . and [it] took no action to change the definition of 'manufacturing' after *United Illuminating Co.* v. *Groppo*, supra, 749, held that the generation of electricity is not manufacturing under the Sales and Use Taxes Act. Reading the statutes together, because the definition of manufacturing is the same under both the Sales and Use Taxes Act and § 12-81 (72) and (76), the generation of electricity is not considered manufacturing under § 12-81 (76) for the plaintiff to be entitled to the tax exemption." (Citations omitted.) The plaintiff subsequently filed a motion for reargument and reconsideration, which the court summarily denied. This appeal followed.

The standard of review of a trial court's ruling on summary judgment is well established. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to [deny] the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Marrero* v. *Hoffman of Simsbury, Inc.*, 220 Conn. App. 649, 658–59, 298 A.3d 1265 (2023).

Both parties agree that the dispositive issue in this appeal is whether the trial court correctly concluded that the generation of electricity is not manufacturing within the meaning of the property tax exemption under § 12-81 (76). The plaintiff's claim, therefore, presents an issue of statutory construction. "When we are called upon to construe a statute that is implicated by a summary judgment motion, our review is plenary. . . . In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z. If the text of the statute is not plain and unambiguous, we may consider extratextual sources of information such as the statute's legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . . Our fundamental objective is to ascertain the legislature's intent." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 181–82, 177 A.3d 1128 (2018). "Moreover, in interpreting tax exemptions, we employ three overlapping presumptions. First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed

against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption." (Internal quotation marks omitted.) *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, 297 Conn. 540, 547, 1 A.3d 1033 (2010).

The plaintiff argues that its process of generating solar electricity fits squarely within the plain and unambiguous definition of manufacturing contained in § 12-81 (72) (A) (iii), "the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail." Specifically, the plaintiff argues that its property performs "at least three transformations of tangible personal property . . . during the manufacturing process," each of which, the plaintiff alleges, is sufficient to satisfy the definition of manufacturing set forth in § 12-81 (72). The plaintiff explains that its property first "transforms the atoms in the semiconductor material in the solar modules by knocking loose electrons allowing electrical current to be captured . . . result[ing] in what is known as direct electrical energy. The [property] then . . . transforms the electricity by converting it from direct current to alternating current electrical energy and then further transforms the electricity to a different (higher) voltage so that it is compatible with [the electric grid]." We disagree with the plaintiff's argument that the "transformations" described by the plaintiff clearly constitute the "converting or conditioning of tangible personal property." The definition of manufacturing does not mention atoms, electrons, energy or electricity. It is neither clear nor obvious that the "transformation" of

such matter would fall into the definition of manufacturing set forth in § 12-81 (72).[10]

The rule of strict construction for exemptions to taxation also militates against an interpretation that the statute unambiguously includes the generation of electricity within the meaning of manufacturing. See, e.g., *William W. Backus Hospital* v. *Stonington*, 349 Conn. 713, 725, 321 A.3d 1117 (2024) (concluding that statutory terms governing property tax exemption, although definitionally broad enough to encompass plaintiff's property, were ambiguous "given the low bar of reasonableness necessary to establish statutory ambiguity for purposes of § 1-2z"). It is well established that "[o]ur role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated . . . [and] [w]e are not permitted to supply statutory language that the legislature may have chosen to omit . . . ." (Citations omitted; internal quotation marks omitted.) *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 520, 264 A.3d 532 (2021). Had the legislature intended for the manufacturing exemption under § 12-81 (76) to plainly and unambiguously apply to machinery and equipment used for the generation of electricity, it easily could have done so. See *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183 ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted)), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d

---

[10] Although the plaintiff primarily argues on appeal that § 12-81 (72) is unambiguous on the basis that the generation of electricity satisfies the statutory definition of manufacturing, the plaintiff also advances cursory arguments that the generation of electricity satisfies the statutory definitions for "processing" and "fabricating." See footnotes 8 and 9 of this opinion. For the same reasons set forth herein, we conclude that those terms are ambiguous as to whether the generation of electricity is included.

255 (2012). Indeed, several provisions of § 12-81 that govern other exemptions from the property tax expressly provide that personal property used for the generation of electricity falls within those particular exemptions. See General Statutes § 12-81 (57) (A) (providing exemption for "any Class I renewable energy source . . . or hydropower facility . . . *installed for the generation of electricity*" (emphasis added)); General Statutes § 12-81 (63) (b) (providing exemption for "cogeneration systems" and defining that term to include "equipment which is designed, operated and installed as a system which *produces, in the same process, electricity*" (emphasis added)).[11] We decline to read into § 12-81 (72) an exemption for the generation of electricity that was not clearly stated by the legislature.

The plaintiff argues that "[t]he fact that electricity involves manufacturing is embedded in various Connecticut legislation." In so arguing, the plaintiff cites to various statutes relating to municipal electric plants. Any reference in those statutes to electricity being "manufactured," however, underscores the ambiguity in the definition of manufacturing at issue in § 12-81 (72), which does not mention electricity. In other words,

[11] The plaintiff contends that "the . . . legislature has expressly included electricity within the definition of 'tangible personal property' in other tax statutes. The Sales and Use Taxes Act, for example, defines 'tangible personal property' broadly as 'personal property that may be seen, weighed, measured, felt or touched or that is in any other manner perceptible to the senses.' General Statutes § 12-407 (a) (13). Electricity clearly meets these criteria. Addressing the question directly, the [Sales and Use Taxes] Act further provides: 'Tangible personal property' includes: (A) digital goods, (B) canned or prewritten computer software, including canned or prewritten software that is electronically accessed or transferred, other than when purchased by a business for use by such business, and any additional content related to such software, and (C) the distribution, generation or transmission of electricity." General Statutes § 12-407 (a) (13). This definition does not resolve the ambiguity in the definition of manufacturing contained in § 12-81 (76). It also does not seem relevant to that definition in light of the purpose of the manufacturing exemption as discussed herein.

the reference in other statutes to the manufacturing of electricity and the absence of such a reference in § 12-81 (72) demonstrates a deliberate choice by the legislature to not include it as a manufacturing exemption in § 12-81 (72). It is well settled that, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 431, 927 A.2d 843 (2007). In the absence of any language relating to the generation of electricity in § 12-81 (72), we reject the plaintiff's contention that the definition of manufacturing unambiguously includes its generation of solar electricity.

The plaintiff contends that "[w]hat this appeal is about is that the trial court was stuck in the past on the case of *United Illuminating Co.* v. *Groppo*, [supra, 220 Conn. 749], and an old, superseded statute and not on the present new statute that was enacted after the *Groppo* case." We disagree.

In *Groppo*, our Supreme Court addressed whether periodic maintenance services to machinery and equipment on the plaintiff's electricity generating power plants were exempt from the statutory sales tax imposed on "services to industrial . . . real property." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 750–51. The regulations promulgated under the Sales and Use Taxes Act provided in relevant part that "[s]ervices rendered to machinery and production equipment [at an industrial plant] are not taxable . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 754. For purposes of the exemption, the regulations defined "an industrial plant" as a "manufacturing facility at which a manufacturing production process is occurring." (Internal quotation marks omitted.) Id. The regulations further

defined "manufacturing" as "the performance as a business of an integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired for sale in the regular course of business by the manufacturer. . . . Manufacturing is an activity which shall occur solely at an industrial plant."[12] (Internal quotation marks omitted.) Id., 754 n.5. On appeal, the plaintiff "contend[ed] that services rendered to the components of its electricity generating facilities [were] exempt from the sales tax because the generation of electricity is manufacturing." (Internal quotation marks omitted.) Id., 754–55.

In resolving the plaintiff's claim, our Supreme Court first concluded that "[t]he regulatory definition of manufacturing [was] ambiguous as to whether the generation of electricity [was] included."[13] (Internal quotation marks omitted.) Id., 756. The court therefore turned for interpretive guidance to other sections of the Sales and Use Taxes Act that contained similar language to the statute at issue and to the legislative history of the act as a whole. See *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 756–62. After reviewing that extratextual material, the court held that, "[w]hile the generation

---

[12] The regulations defined "manufacturing production process" as "any one of a series of production activities, beginning with the movement of the raw materials after their receipt . . . and ending with the completion of the finished product . . . for its sale to the ultimate consumer. . . . Manufacturing production process shall occur solely at an industrial plant." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 754 n.6.

[13] As discussed further herein, the definition of "manufacturing" in § 12-426-11b (10) of the Regulations of Connecticut State Agencies, since repealed, had defined manufacturing in substantively similar terms as § 12-81 (72). Our conclusion that the definition set forth in § 12-81 (72) is ambiguous is consistent with our Supreme Court's determination that the definition of manufacturing in § 12-426-11b (10) of the regulations was "ambiguous as to whether the generation of electricity is included." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 756.

of electricity *may in some sense* be a manufacturing process, we conclude that the legislature did not intend to exempt businesses engaged in the generation of electricity for public consumption from the [statutory] tax on services rendered to machinery and production equipment . . . ." (Emphasis added; internal quotation marks omitted.) Id., 755. Specifically, the court concluded that the legislative history of the Sales and Use Taxes Act revealed that the elimination of the sales tax for manufacturers was "intended to encourage the growth and development of 'true' manufacturing industries in Connecticut." Id., 761. In other words, "the manufacturing industries exempted from taxes on . . . services rendered [to machinery and equipment] were intended to be such as might go elsewhere . . . not those, like a public power utility, that would ordinarily be expected to remain in this state." (Citation omitted; internal quotation marks omitted.) Id., 762. The court therefore concluded that manufacturing exemptions from the sales tax, including the regulatory exemption claimed by the plaintiff, "[did] not apply to businesses engaged in the generation of electricity." Id.

The plaintiff contends that *Groppo* is no longer good law because the decision was "overruled" by the legislature's subsequent enactment of Public Act 92-193.[14] Section 1 of Public Act 92-193 amended § 12-81 (72) by, inter alia, adding the current definition of "manufacturing,"[15] and § 6 of Public Act 92-193 made the same definition of "manufacturing" applicable with respect to the Sales

[14] *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 749, was officially released on January 7, 1992. The legislature enacted Public Act 92-193 on July 1, 1992.

[15] Prior to Public Act 92-193, General Statutes (Rev. to 1991) § 12-81 (72), like the current revision of the statute, defined machinery and equipment in relevant part as "tangible personal property which is . . . installed in a manufacturing facility . . . and the predominant use of which is for . . . manufacturing"; it did not, however, define the term "manufacturing." See also Public Acts 1990, No. 90-270, § 28; Public Act 92-193, § 1.

and Use Taxes Act.[16] The plaintiff thus argues that Public Act 92-193, by changing the definition of "manufacturing" for purposes of exemptions to the sales tax, effectively abrogated the holding of *Groppo*, and, moreover, that "the intention [of the legislature in adopting Public Act 92-193] was to *broaden* the [definition of manufacturing] to cover processes that were not considered the industrial plant type manufacturing of days gone by that were the focus of *Groppo*." (Emphasis in original.) The plaintiff contends that the "[p]roduction and transformation of electricity from the plaintiff's solar facility is one of those broadened processes." In so arguing, the plaintiff does not address the similarity between the definitions of manufacturing at issue in *Groppo* and this case. Our Supreme Court examined those definitions in *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 297 Conn. 558.

In *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 297 Conn. 563, our Supreme Court compared the definition of manufacturing set forth in the regulations promulgated under the Sales and Use Taxes Act prior to 1992, which was the definition at issue in *Groppo*, to the definition of manufacturing enacted in 1992, which, as stated previously, was identical under the Sales and Use Taxes Act and the property tax statute at issue in this case.[17] In *Groppo*, the regulation at issue defined manufacturing as "the performance

---

[16] The plaintiff cursorily asserts in its brief to this court that Public Act 92-193 did not make "the definitions of manufacturing . . . identical under the property tax statutes and the sales and use tax statute." This argument is without merit. Public Act 92-193 amended both § 12-81 (72) and the Sales and Use Taxes Act, neither of which had defined the term "manufacturing," by, inter alia, providing that "manufacturing means the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail." (Internal quotation marks omitted.) Public Acts 1992, No. 92-193, §§ 1, 6.

[17] Although *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 297 Conn. 540, involved the definition of manufacturing in the Sales and Use Taxes Act, versus the property tax statute at issue in this case,

. . . of an integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired for sale . . . ." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 754 n.5. The definition enacted by Public Act 92-193 provides in relevant part that manufacturing means "the activity of converting or conditioning tangible personal property by changing the form, composition, quality or character of the property for ultimate sale at retail . . . ." In examining those definitions, the Supreme Court concluded that "[t]he minor differences in language appear inconsequential. Both the statutory and the regulatory definitions provide that manufacturing involves changing the form, composition or character of personal property for purposes of sale. Put simply, both definitions describe the actual process involved in making a product and relate to activities that occur directly on an assembly line or on the production floor."[18] (Footnote omitted.) *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 558. The court further explained: "One would expect, [based on the legislative history of Public Act 92-193], that the definition of manufacturing [therein] would reflect [an] intent to broaden the scope of tax exemptions allowed to manufacturers. . . . [H]owever . . . [t]he change alluded to in the legislative history is not literally in the definition itself . . . . [Rather] [t]hat change reflects the legislature's understanding that manufacturing in high technology industries involves a much more complicated, nuanced

and did not pertain to the generation of electricity, the 1992 definition under both statutes is identical and the court's analysis of the change in the legislature's language is relevant to our resolution to the plaintiff's claim in this case.

[18] In addition, the court noted that, like the term manufacturing in Public Act 92-193, "[t]he closely related concepts of fabricating and processing also are defined in very traditional terms . . . ." (Internal quotation marks omitted.) *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 297 Conn. 558 n.14.

and interconnected process . . . ." Id., 563. The court, therefore, concluded that Public Act 92-193 did not "[signify] an intended change in the actual definition of manufacturing." Id., 558. The plaintiff's claim that the legislature overruled *Groppo* when it enacted Public Act 92-193 therefore is not supported by any meaningful change in the language of the definition of manufacturing.

Rather than examine the language used by the legislature in defining manufacturing, the plaintiff relies primarily on a bill analysis of Public Act 92-193 prepared by the Office of Legislative Research (OLR), which states in relevant part that "[t]his bill extends the [property tax exemption for manufacturing machinery and equipment] by . . . using . . . broader definitions of manufacturing and machinery . . . ."[19] Office of Legislative Research, Amended Bill Analysis for Substitute House Bill No. 5708, as amended by House Amendments A, B, and C, p. 4, available at https://www.cga.ct.gov/ps92/ba/1992HB-05708-R00-BA.htm (last visited September 11, 2025). Although the OLR report states the purpose of Public Act 92-193 was to broaden the definition of manufacturing, it does not mention anything about the generation of electricity. More importantly, however, the plaintiff's reliance on that summary disregards the legislative history of Public Act 92-193.

We agree with the defendant's assertion that the legislative history of § 12-81 "reveals a kindred purpose behind the [property tax] exemption [for manufacturing machinery and equipment] to that found" by our Supreme Court in *Groppo* with respect to the sales tax exemption for services rendered to machinery and equipment at manufacturing facilities. The legislature

---

[19] "Although the comments of the [OLR] are not, in and of themselves, evidence of legislative intent, they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill." *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 124 n.15, 942 A.2d 396 (2008).

added machinery and equipment used for manufacturing to the list of property tax exemptions, codified at § 12-81 (72),[20] in 1990. See Public Acts 1990, No. 90-270, § 28. The enacting bill was intended to create "an integrated and sensible attitude toward a *retention of our manufacturing base*." (Emphasis added.) 33 S. Proc., Pt. 10, 1990 Sess., p. 3140, remarks of Senator Kevin B. Sullivan. Senator Sullivan urged that unanimous approval of the legislation "would be a true manifestation of the fact that Connecticut wishes to *retain its manufacturing base* . . . ." (Emphasis added.) Id., p. 3139. Another purpose of the exemption was to attract *new* manufacturing industries to the state. Representative William J. Cibes, Jr., remarked that "[t]he bill, as amended . . . addresses one of the main problems that businesses and especially manufacturing has confronted in recent years in this state. . . . [A] study . . . found that one of the major disincentives for business to expand or to locate into Connecticut in the first place, was the impact of the personal property tax on manufacturing equipment. The bill as amended addresses that problem head on . . . ." 33 H.R. Proc., Pt. 26, 1990 Sess., pp. 9381–82.

Similarly, during the legislative discussion of Public Act 92-193, it became clear not only that any broadening of the term "manufacturing" was intended *only* to bring "high technology manufacturing processes" within the

---

[20] The manufacturing exemption for machinery and equipment claimed by the plaintiff, § 12-81 (76), was added in 2006. See Public Acts 2006, No. 06-83, § 9. As stated herein, the only material difference between subsections (72) and (76) is the assessment years for which each provision is effective. See footnote 6 of this opinion; see also 49 H.R. Proc., Pt. 11, 2006 Sess., pp. 3370–72, remarks of Representative Cameron C. Staples ("[Public Act 06-83] references existing [statutory] definitions [for manufacturing and machinery and equipment], and there is no change to those definitions as to what is covered under the machinery and equipment portions of the [statute]. . . . [The] bill, in no way, changes what is covered under this exemption. It just matches the present exemption statutes.").

meaning of that term, but also that the underlying purpose of the manufacturing exemptions—to benefit those industries that might go elsewhere—remained the same. Representative Lenny T. Winkler remarked that "this [bill] will certainly allow us to be more competitive and will definitely *bring in more jobs to the state that we desperately need.*" (Emphasis added.) 35 H.R. Proc., Pt. 19, 1992 Sess., p. 6401; see also id., p. 6405, remarks of Representative Glenn Arthur (stating that modernized definition of manufacturing "will build a business atmosphere *that will attract new manufacturing and high technology jobs to our state*" (emphasis added)). Representative Thomas S. Luby remarked that "what this bill does is it *modernizes* the definition [of manufacturing] and, in a sense, takes . . . *higher technological applications in manufacturing* that may not be directly connected to the manufacturing equipment and . . . brings them within . . . certain tax exemptions or breaks." (Emphasis added.) Id., p. 6391. In other words, "the bill modernize[d] the definition of manufacturing equipment and machinery *so that it includes those kinds of equipment and machinery . . . that are used in high technology manufacturing processes*." (Emphasis added.) Id., p. 6405, remarks of Representative Arthur. The legislative history of Public Act 92-193 discloses no evidence to support the plaintiff's contention that the legislature intended for the newly promulgated definition of manufacturing contained therein to include the generation of electricity. Rather, the legislative history makes clear that the property tax exemption for manufacturing machinery and equipment, as enacted, was intended to benefit manufacturing industries that "might go elsewhere . . . not those, like a . . . power utility, that would ordinarily be expected to remain in this state." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 762.

On the basis of the foregoing, we therefore agree with the defendant's contention that, although Public Act 92-193 changed the definition of manufacturing, "the initial legislative intent behind the manufacturing exemption—the retention of Connecticut's manufacturing base" remained the same, and, to the extent that Public Act 92-193 was intended to broaden the definition of manufacturing, its purpose was only to bring "high technology" manufacturing, such as the development of computer programming, within the ambit of the manufacturing exception, not the generation of electricity.

Moreover, "it is a well-recognized rule of statutory construction that the legislature is presumed to know all the existing statutes, the judicial interpretation of them, and the effect that its action or nonaction will have on them." (Internal quotation marks omitted.) *Booker* v. *Jarjura*, 120 Conn. App. 1, 20, 990 A.2d 894, cert. denied, 297 Conn. 909, 995 A.2d 636 (2010). "This presumption is strengthened when the legislature has affirmatively reenacted the statute after the interpretation in question." (Internal quotation marks omitted.) *Chestnut Point Realty, LLC* v. *East Windsor*, 158 Conn. App. 565, 573, 119 A.3d 1229 (2015), aff'd, 324 Conn. 528, 153 A.3d 636 (2017). "Because the legislature is presumed to be aware of the judicial construction placed on its enactments . . . its failure to correct or undermine what we stated in those cases is evidence that the legislature has validated our interpretation." (Citation omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 693, 674 A.2d 1300 (1996). Thus, because the legislative history of Public Act 92-193 demonstrates that the legislature did not intend for the newly promulgated definition of manufacturing, which it made applicable to the Sales and Use Taxes Act, to include the generation

of electricity, Public Act 92-193 may be viewed as evidence of the legislature's validation of our Supreme Court's interpretation that manufacturing exemptions to the sales tax are intended to benefit only those industries that might go elsewhere and, therefore, do not apply to "businesses engaged in the generation of electricity." *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 762.[21]

On the basis of the foregoing, we are not persuaded by the plaintiff's argument that Public Act 92-193 overruled the holding of *Groppo* by broadening the definition of manufacturing to include the generation of electricity.[22]

---

[21] We further note that Public Act 92-193 added a provision to § 12-81 (72) allowing a municipality to retroactively recoup tax revenue on property that had been exempt under that subsection if the claimant subsequently "moves its manufacturing operations *entirely out of this state*." (Emphasis added.) We view the addition of this provision as evidence of the legislature's affirmation that the same legislative purpose the court in *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 749, relied on in constructing manufacturing exemptions to the sales tax underlies the manufacturing exemption from the personal property tax pursuant to § 12-81 (72). Public Act 92-193 added the following provision to § 12-81 (72): "The . . . municipality . . . shall hold a security interest . . . in any machinery or equipment which is exempt from taxation pursuant to this subdivision, in an amount equal to the tax revenue reimbursed or lost . . . . Such security interest shall be enforceable against the claimant for a period of four years after the last assessment year in which such exemption was received in any case in which said manufacturer ceases all manufacturing operations or moves its manufacturing operations entirely out of this state." Public Acts 1992, No. 92-193, § 1.

[22] Indeed, in a recent decision from our Supreme Court, Justice Ecker confirmed, in dicta, that *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 749, not only remains good law but that its holding extends to cases where, as here, a taxpayer claims an exemption for property used for the generation of electricity pursuant to § 12-81 (72) and (76). See *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 182 n.4, 278 A.3d 442 (2022) (*Ecker, J.*, concurring). Specifically, Justice Ecker explained in his concurrence: "This court has held that the generation of electricity does not constitute 'manufacturing' in the cognate exemption for sales and use taxes; see *United Illuminating Co.* v. *Groppo*, supra, [220 Conn. 755]; and, thus, the wind turbines in the present case evidently would not qualify under the existing exemptions for machinery used in designated manufacturing operations. See General Statutes § 12-81 (60), (70), (72), (76), and (78). Presumably, this explains why the plaintiff [in the present case] has not claimed the

Accordingly, our Supreme Court's decision in *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 749, although interpreting the meaning of "manufacturing" relative to an exemption from the sales tax, is highly relevant to our interpretation of "manufacturing" within the meaning of the property tax exemption claimed by the plaintiff.[23]

"It is axiomatic that, when interpreting the terms of one statute, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 638, 148 A.3d 1052 (2016). "[J]ust as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and

benefit of any such exemption." *Wind Colebrook South, LLC* v. *Colebrook*, supra, 183 n.4. "Although dicta is not binding precedent . . . we may look to dicta as persuasive authority . . . ." (Citation omitted.) *Voris* v. *Molinaro*, 302 Conn. 791, 797 n.6, 31 A.3d 363 (2011).

[23] The plaintiff argues that this court previously has suggested that decisions interpreting the term "manufacturing" prior to the enactment of Public Act 92-193 have "no precedential value." The plaintiff relies on *Kobyluck Bros., LLC* v. *Planning & Zoning Commission*, 167 Conn. App. 383, 400, 142 A.3d 1236, cert. denied, 323 Conn. 935, 151 A.3d 383 (2016), which the plaintiff characterizes as holding that *Connecticut Water Co.* v. *Barbato*, 206 Conn. 337, 537 A.2d 490 (1988), in which our Supreme Court interpreted the same, since repealed regulatory definition at issue in *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 749, "was not useful for determining what the terms manufacturing and processing . . . [currently] meant . . . ." The plaintiff's reliance on *Kobyluck Bros., LLC*, is misplaced. In that case, this court found *Connecticut Water Co.* to be of limited precedential value because of the "critical distinction between . . . statutory construction principles" in a tax assessment appeal and a zoning appeal. *Kobyluck Bros., LLC* v. *Planning & Zoning Commission*, supra, 399.

Moreover, our Supreme Court has expressly rejected the plaintiff's argument. See *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, supra, 297 Conn. 555 n.11 ("[a]lthough *Connecticut Water Co.* relied on [the repealed regulatory definition], our reasoning in that case still applies because [that regulatory] definition of manufacturing . . . is not substantially distinct from the definition of manufacturing in [Public Act 92-193]" (citations omitted)).

inconsistent . . . courts must discharge their responsibility, in case by case adjudication, to [ensure] that the body of law . . . remains coherent and consistent. . . . Thus, we are required to read statutes together when they [relate] to the same subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 709, 998 A.2d 1 (2010). "The law prefers rational and prudent statutory construction, and we seek to avoid interpretations of statutes that produce odd or illogical outcomes." *State* v. *George J.*, 280 Conn. 551, 574–75, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). "[I]t is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results. . . . Consequently, [i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, supra, 710.

Mindful of these legal principles, we conclude that it would make little sense and yield a bizarre result if the generation of electricity is manufacturing for purposes of the manufacturing exemptions from the personal property tax but not the sales tax. As stated previously, the legislature, by enacting Public Act 92-193, made the definition of manufacturing the same for both sets of exemptions. And, as we conclude herein, the manufacturing exemptions from the sales tax and the manufacturing exemptions from the property tax pursuant to § 12-81 (72) and (76) were created by the legislature to serve the same purpose, namely, to retain manufacturing industries that might go elsewhere, and, therefore, are intended to benefit the *same* manufacturing industries. Because, pursuant to *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 762, that legislative intent renders "businesses engaged in the generation

of electricity" ineligible for manufacturing exemptions from the sales tax, it would be illogical to conclude that the legislature intended for the same businesses to be eligible for the manufacturing exemption from the property tax pursuant to § 12-81 (76). See *Rainbow Housing Corp.* v. *Cromwell*, supra, 340 Conn. 520 ("[W]e [must] construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.)).

We therefore conclude that the generation of electricity is not manufacturing within the meaning of § 12-81 (72) and (76),[24] and thus that the court properly denied the plaintiff's motion for summary judgment.

The judgment is affirmed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

––––––––––––––––––––––––––––

[24] Our conclusion that machinery and equipment used for the generation of electricity is ineligible for the manufacturing exemption pursuant to § 12-81 (76), therefore, is dispositive of the plaintiff's arguments; see footnote 10 of this opinion; that its electricity generating property qualifies for the exemption on the alternative bases that the generation of electricity is "processing" or "fabricating," as those terms are defined by § 12-81 (72). See *United Illuminating Co.* v. *Groppo*, supra, 220 Conn. 755 (rather than "undertak[ing] a scientific discussion of the nature of electricity or its generation by mechanical means [to determine whether such use falls within the statutory terms]" relying on "the legislative history and construction of the [statutory scheme] as a whole" for its conclusion that plaintiff did not qualify for claimed manufacturing exemption").